STEFFENS et al. v. STEINER et al. (ten cases).

(Circuit Court of Appeals, Second Circuit.   February 15, 1916.   On Motion to Retax Costs, March 14, 1916.)

No. 89.

1. PATENTS ⬤◁≈28—DESIGNS—NECESSITY OF INVENTION.
    To sustain a design patent, the design must involve something more than mere mechanical skill; and whether the assembling of old design elements into one unitary design is patentable depends on whether, in the particular case, such assembling rises to the level of invention and the result possesses originality and beauty.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 33; Dec. Dig. ⬤◁≈28.]

2. PATENTS ⬤◁≈328—VALIDITY—DESIGNS FOR CIGAR BANDS.
    The Jones design patents, Nos. 42,777, 42,781, and 42,786, for designs for cigar bands, held void for lack of invention.

On Motion to Retax Costs.

3. COSTS ⬤◁≈254(6)—APPELLATE COURT—COST OF PRINTING RECORD.
    For the purposes of the record on appeal in a patent suit the defendants, who were engaged in the business, did certain lithographic work in reproducing exhibits. Defendants were successful in the appeal. Held that, under court rule 23 (150 Fed. xxxii, 79 C. C. A. xxxii), providing that "the amount paid for printing the record shall be taxed against the party against whom costs are given," defendants were entitled to tax only such sums as they paid for labor and material in doing such work, and that a further claim for overhead or shop charges was not taxable.
    [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 976, 977; Dec. Dig. ⬤◁≈254(6).]

4. COSTS ⬤◁≈254(6)—DOCKET FEE—SUITS CONSOLIDATED FOR APPEAL.
    Where separate infringement suits between the same parties were tried as one by stipulation, and by consent the court made an order dispensing with separate transcripts on appeal and requiring the printing of but one record, the prevailing party is entitled to the taxation of only one docket fee.
    [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 976, 977; Dec. Dig. ⬤◁≈254(6).]

Appeal from District Court of the United States for the Southern District of New York.

Ten suits in equity by Emil Steffens, Jr., and Homer A. Jones, co-partners as Steffens, Jones & Co., against Henry Steiner, Isidor Stein-

er, and Joseph Kopperl, copartners as Wm. Steiner, Sons & Co. Decrees for complainants in three cases, and defendants appeal, all being heard on one record as one appeal. Reversed.

Joseph L. Levy, of New York City, for appellants.

Charles A. Brodek, of New York City (T. F. Bourne, of New York City, of counsel), for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The complainants brought against defendants ten suits for infringement of ten design patents for cigar bands granted to complainants. The separate bills alleged infringement of letters patent Nos. 42,778, 42,788, 42,787, 42,786, 42,784, 42,783, 42,781, 42,780, 42,779, and 42,777. An injunction, the recovery of $250, and an accounting of profits, damages, and costs were asked in each bill. For the convenience of the court the cases were tried together. On January 6, 1915, an opinion was filed holding that patents Nos. 42,777, 42,781, and 42,786 were infringed, and that injunctions should issue, and that complainants should recover $250 on each of the three suits. As the cases were tried together, no costs were awarded. Pursuant to that opinion separate decrees were entered dismissing the bills as respects the remaining seven patents. As to those seven suits no appeal has been taken, and the time within which an appeal can be taken has now expired. As respects the other three cases, an appeal was duly taken, and the three cases were embodied in one appeal record, and were heard as one appeal.

[1] The suits are based on the act of Congress of February 4, 1887, which reads:

"That hereafter, during the term of letters patent for a design, it shall be unlawful for any person other than the owner of the said letters patent, without the license of such owner, to apply the design secured by such letters patent, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or to sell or expose for sale any article of manufacture to which such design or colorable imitation shall, without the license of the owner, have been applied, knowing that the same has been so applied. Any person violating the provisions, or either of them, of this section, shall be liable in the amount of two hundred and fifty dollars." 24 Stat. 387, c. 105, § 1 (Comp. St. 1913, § 9476).

The District Judge in his opinion said:

"The most important issue in these cases is the validity of the patents themselves, because the imitation is so deliberate, unblushing and minute as to require no consideration at all. Were the matter open to me de novo, I should hardly think that these groupings of elements, so long familiar in the art, into such new combinations as are here presented, was beyond the competence of an ordinary designer, who for these purposes should be regarded as the test of invention. It is true that no such combinations are exactly presented before in the art, and indeed their literal novelty is unquestioned; but I cannot bring myself to think that the especial combinations were variations beyond what scores of designers could produce at will out of the materials at hand."

But notwithstanding the opinion thus expressed the court below, evidently contrary to its own conviction and in deference to its understanding of the opinions of this court in Graff, Washbourne & Dunn v. Webster, 195 Fed. 522, 115 C. C. A. 432 (1912), Dominick & Haff

v. R. Wallace & Sons Mfg. Co., 209 Fed. 223, 126 C. C. A. 317 (1913), and Mygatt v. Schaffer, 218 Fed. 827, 134 C. C. A. 515 (1914), felt compelled to sustain the validity of the three patents herein involved. The Supreme Court of the United States in Smith v. Whitman Saddle Company, 148 U. S. 675, 13 Sup. Ct. 768, 37 L. Ed. 606 (1893), quoted approvingly from an opinion by Mr. Justice Brown, written when he was District Judge for the Eastern District of Michigan, in which he stated that the law applicable to design patents did not materially differ from that in cases of mechanical patents. He added:

"To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in their new rôle, is not invention."

The Supreme Court, Chief Justice Fuller writing the opinion, after expressing its approval of the above passages, added:

"If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty, and the result is in effect a new creation, the design may be patentable."

That decision established the law on this subject for this country. And this court has been guided by it in its decisions. In no one of them have we laid down anything which is contrary to the rule laid down in the Whitman Saddle Case. That a design patent must disclose invention is an accepted principle in this and in all federal courts. In Graff, Washbourne & Dunn v. Webster, supra, each element of the patented designs considered separately was old. And this court held that that fact did not negative invention which might reside in the manner in which they were assembled, since it is the design as a whole and the impression it makes on the eye, which must be considered. Judge Coxe said:

"The situation in this respect is analogous to machines made up of a combination of old elements. The machine produces a new result, the design a new impression upon the eye. To refuse patentability to a design because the separate elements are old would be tantamount to denying originality to 'The Lion of Lucerne,' because other sculptors before Thorwaldsen had carved lions from stone. It would relegate 'The Angelus' to obscurity, because other artists before Millet had painted peasants at work in the harvest field."

If the court had not thought that invention was involved in what was done, the patents would not have been sustained. The same remark applies to the decision in Dominick & Haff v. R. Wallace & Sons Mfg. Co., supra, as well as to that in Mygatt v. Schaffer, supra. Invention may or may not reside in combining a multitude of old design elements into one unitary design. Whether or not invention is involved in any particular case of that kind must depend upon the novelty of the unitary and resultant design and the circumstances of the case.

The question in the case at bar is not whether a design patent can be sustained, although each separate element in the design may be old, but it is whether what has been done in assembling the old elements in the new designs rose in these particular cases to the level of invention. What has been done in the patents in suit has been to vary

slightly the shape and disposition of the otherwise old design elements or surface ornamentation of the cigar bands. The test of invention by which the court below decided the case was stated as follows:

"This test will not allow validity to a patent for immaterial changes which do not differentiate from the prior art enough to be distinguishable, but will allow any new combination of old elements, even though it took no invention beyond that of a skilled designer."

In laying down the above test the court below has been led into error. To sustain a design patent the design must involve something more than mere mechanical skill. There must be invention.

[2] Plaintiff's design patent No. 42,781, which is the most elaborate of the three, contains in the center a woman's head and bust and over it the word "Esquisitos." There is nothing about this that is novel. There were prior to this design numerous cigar bands containing the heads of women and some containing the heads of men. The word "Esquisitos" even appears on a similar design prior to 1903, although placed at the bottom of the design, instead of the top. The outline of the band, if not old, so nearly resembles the prior art that it is not entitled to consideration. We cannot discover in the design of that patent, or in the design of the other two, anything which indicates patentable invention.

In view of the conclusion to which we have come, it is not necessary to consider any of the other questions which were presented on the argument. The decrees must be reversed, and the bills dismissed.

It is so ordered.

### On Motion to Retax Costs.

PER CURIAM. This is a motion to retax the costs in the above-entitled cases.

[3] 1. There were ten cases, and separate decrees filed in each case. In the District Court seven of the cases were dismissed and three went against defendants, and these three were appealed to this court, where defendants were successful. The subject-matter involved was certain cigar bands, and at the trial certain prior art bands were offered in evidence. These original bands were by order of court removed from the original records and grouped together as to each patent in suit in the Exhibit E to L; this exhibit taking the place of the original record.

The original bands were colored and embossed, and to reproduce this exhibit, ordinary lithographic processes were not available. Thus the reproduction of these bands became a part of the record on appeal, and the first question is whether the amount fixed by the clerk for this work was correct. Defendants, being engaged in business of that character, made the lithographic exhibit. The costs, as taxed by the clerk, included (in addition to what was actually expended) an amount for what might be called overhead charges. Thus, 213 hours of engraving were charged for at the rate of 75 cents an hour. The actual amount paid was 60 cents an hour. The balance, according to defendants, was "for the materials, light, rent, power, and general overhead charges."

232 F.—55

Rule 23 of this court (150 Fed. xxxii, 79 C. C. A. xxxii) provides, among other things:

"In case of reversal, affirmance or dismissal with costs, the amount paid for printing the record shall be taxed against the party against whom costs are given."

The theory of this rule is that the litigant shall be reimbursed for his actual expenditure, which, of course, must be a proper expenditure. If, as in this case, a defendant does his own printing, he should receive only the amount actually paid. So-called overhead expenses are all estimates, and to allow such expenses would open the door to uncertainty and unnecessary controversy. If a defendant desires to print his own record, he must keep accurate account of the cost of materials, the time occupied, and any other items which involve actual expenditures, and he cannot expect to tax costs upon the basis either of the price at which he would make a profit in the open market, or at which he would do the work for a customer, figuring in what he might be pleased to estimate as overhead charges. We think, therefore, that defendants were entitled to tax only such sums as were paid by them for labor and material.

[4] 2. Defendants, who, as above stated, were defeated in three of the cases below, but prevailed here in those cases, now ask for three docket fees. It was stipulated that the cases "shall be tried as one action." A certain saving clause of the stipulation did not relate to costs, but referred to the rights and defenses of the parties. Later, and apparently with the consent of the parties, an order was signed by the District Court dispensing with the separate transcript of record from each of the decrees appealed from, and providing that but "one decree (as they are all alike in all the three cases) need be printed in the transcript, papers being entitled in all three cases."

It is apparent that the parties intended to limit the expenses to one bill of costs, and to present, with the permission of the court, the whole subject in a single record. Under these circumstances, we think that defendants appellants are entitled to only one docket fee. As to this the taxation is affirmed, and as to the cost of printing the record the clerk should retax the costs for the amount paid for labor and material, but excluding so-called overhead charges.