R. E. DIETZ CO. v. BURR & STARKWEATHER CO.

(District Court, W. D. New York. June 15, 1916.)

1. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—DESIGN FOR LANTERN.
    The McArthur design patent, No. 42,488, for a design for a tubular lantern, is limited to the shape or configuration of the chimney, and does not include the lantern as a whole, and, as so limited, is void for lack of invention; also *held* not infringed.

2. PATENTS ⬤⟿28—INVENTION—DESIGNS.
    In design patents, as in mechanical patents, the test of invention is whether the new combination is within the province of the ordinary workman.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 33; Dec. Dig. ⬤⟿ 28.]

3. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—TUBULAR LANTERN.
    The Erb patent, No. 962,135, and the Bergener patent, No. 962,114, each for a tubular lantern, both *held* to disclose invention, and both *held* infringed.

4. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—TUBULAR LANTERN.
    The Bergener patent, No. 1,072,688, for a tubular lantern having a new and novel device for raising and lowering the globe, while limited to the specific device described, was not anticipated, and discloses invention; also *held* infringed.

In Equity. Suit by the R. E. Dietz Company against the Burr & Starkweather Company. On final hearing. Decree for complainant in part, and for defendant in part.

Wilhelm & Parker, of Buffalo, N. Y. (Arthur E. Parsons, of Syracuse, N. Y., and Charles W. Parker and Karl E. Wilhelm, both of Buffalo, N. Y., of counsel), for plaintiff.

Church & Rich, of Rochester, N. Y., and Whittemore, Hulbert & Whittemore, of Detroit, Mich. (Frederick F. Church, of Rochester, N. Y., and I. J. Whittemore, of Detroit, Mich., of counsel), for defendant.

HAZEL, District Judge. This is a suit in equity to enjoin infringement of four letters patent—design patent No. 42,488, dated May 7, 1912, to Warren McArthur, Jr., and mechanical patents Nos. 962,114 and 1,072,688, dated June 21, 1910, and September 9, 1913, respectively, to Charles Bergener, and patent No. 962,135, dated June 21, 1910, to Charles F. Erb. These patents all relate to tubular lanterns of the cold blast type, having a base, an oil fount, a burner underneath the globe, which engages at its top a chimney extending into or through a round casing or dome supported at the sides by tubing; the upper

ends thereof being attached to the dome or chimney, while the lower ends are made to communicate with the air chamber under the burner. The globe is supported by a plate resting upon the burner and having perforations through which the cold air enters, while the chimney also has small openings for admitting current to the inside of the lantern.

### McArthur Patent, No. 42,488.

[1] This is a design patent, in which the specification reads as follows:

"The accompanying drawing represents a perspective view of a tubular lantern embodying this design. The characteristic feature of this design consists of the upwardly contracted or downwardly flaring shape of the chimney A which extends from the globe B to the top C of the lantern frame. I claim: The ornamental design for a tubular lantern as shown and described."

The patent, in my opinion, is limited to the shape or configuration of the chimney, or to that portion of the lantern extending from the globe to the apex of the lantern frame, and does not include the tubular lantern as a whole. The well-proportioned, bulbous globe was not an element of the design, and although the lantern has a pleasing appearance and is readily distinguished from prior tubular lanterns using pear-shaped globes, still its distinctiveness is appreciably due to the mechanical changes required for use with the shorter globe. To adapt the tubular lantern to such shorter globe, it was necessary to extend the chimney downwards, broadening it at the lower end to fit over the upper rim of the globe, at the same time retaining a narrow cylindrical top, which could be moved into or within the air chamber when the globe was raised or lowered by the use of the lifting device. To so change or alter the tubular lantern did not involve the exercise of the inventive faculty or of artistic ability. A skilled mechanic, having before him the Osborne patent, No. 248,878, and Defendant's Exhibit P, Ham Fire Chief Lantern, with its tapering or flaring chimney, could readily extend the ordinary lantern chimney downward and flare it to fit the short globe.

[2] The tubular lantern art was crowded at the time the design patent herein was granted, and there was little room for originality in design. In design patents, as in mechanical patents, the test of invention is whether the new combination is within the province of the ordinary workman. Steffens et al. v. Steiner et al. (C. C. A., Second Circuit) 232 Fed. 862, —— C. C. A. ——, decided February 15, 1916, and Strause Gas Iron Co. v. William M. Crane Co. (C. C. A., Second Circuit) 235 Fed. 126, —— C. C. A. ——, decided April 11, 1916. It is believed that any one wishing to adapt a tubular lantern chimney to a short globe would at once set about it by carrying the end of the chimney downward to bring it into juxtaposition with the top of the globe. At the trial I expressed the opinion that the design was not without merit, and I credited the lantern with an appearance distinctive from those of the prior art; but this was owing to the fact that at that time I had in mind the tubular lantern as a whole.

Erb Patent, No. 962,135, and Bergener Patent, No. 962,114.

[3] These patents describe improvements in tubular lanterns in which the frames are made of two stamped half tubes of sheet metal, in which are formed ribs for stiffening the tubes and for stretching the metal as it is being shaped in the dies, and which are then secured together by overlapping seams extending along the inner and outer edges of the half tubes. The single claim of the Erb patent reads:

"A tubular lantern having tubes composed of stamped half tubes of sheet metal which extend in a continuous piece from end to end and are provided between their ends at intervals with hollow transverse stiffening beads, said half tubes being joined on opposite sides by overlapped seams, substantially as set forth."

Claim 1, relied upon in the Bergener patent, reads:

"1. A tubular lantern having tubes which are each composed of two substantially half-round half tubes, stamped of sheet metal and secured together by seams on the inner and outer sides of the tubes, and each half tube being formed between said seams with a hollow longitudinal rib thrown out on the half-round surface of the half tube, substantially as set forth."

The proofs show that any novelty there may be in these patents resides in the adaptation of transverse and longitudinal beads to half tubes of lantern frames stamped from flat blanks to stiffen the tubes and prevent them from buckling. Of course, the use of beads, ribs, corrugations, or crimps, in metal or tin, for strengthening or stiffening, was an expedient as old as the art itself and had been applied to lanterns. The prior patents and publications in evidence show beads or ribs stamped into the metal for preventing the denting or injuring of the tube; but such two-piece lantern tubes often parted or buckled where they were joined together in the dies, resulting not infrequently in great wastage of tin plate.

The patentees herein were employés of the competing companies, which afterwards became complainant's predecessors, at the time the patents were granted, and each inventor independently sought to overcome said difficulties. Previously the C. T. Ham Manufacturing Company sold side lamps or single tube lanterns in which a half-round tube section only had been strengthened by corrugations or beads formed in the tin blank, and the Buhl Stamping Company, manufacturer of the lantern sold by defendant, had also previously manufactured lanterns with transverse beads in upright tubes; but such prior constructions and patents (Betts patent, No. 340,274, and Ham patent, No. 628,461) are not anticipatory. The lanterns constructed under such patents were not composed of half tubes joined together at their seams and extending in a continuous piece from end to end with transverse or lengthwise beads, as in the Erb and Bergener patents. In the Betts patent the upright tubes were provided at their upper ends with beads; but the beads were used to connect the parts together, and not to accomplish the objects of the patents in suit. So, also, in the Ham patent the beads were not projected outwardly beyond the surface of the top; their purpose being to make a small joint, and not to stiffen tubular half sections.

In the Orphy patent, No. 390,699, the half tubes are shown to have been made of single strips of metal, and not of two round half portions joined together. No doubt the corrugations or ribs of the Orphy patent were intended to stiffen the flat side of the tube; but their function was different from that of the ribs of the patents here considered, which were intended, not only to facilitate assembling, but also to retain the half tubes in position to prevent them from buckling while being seamed or joined together by the die or stamp. The inventions, true enough, are of modest character; but, as said by Judge Lacombe in Miehle Printing Press & Mfg. Co. v. Whitlock P. P. & M. Co., 223 Fed. 649, 139 C. C. A. 203:

"Patentable novelty is sometimes found in discovering what is the difficulty with an existing structure and what change in its elements will correct the difficulty, even though the means for introducing that element into the combination are old and their adaptation to the new purpose involves no patentable novelty."

Moreover, the improvement seems to have been considered as fairly important, as shown by the popularity attained by the lanterns embodying it, together with the improvement described in the Bergener patent, hereinafter considered. The Buhl Stamping Company had manufactured tubular lanterns for many years prior to the inventions in question, and evidently failed to perceive that the operation of joining half tubes would be facilitated by putting in them either transverse or longitudinal beads. The defendants have unquestionably appropriated both inventions by embodying them in Buhl lantern No. 775.

### Bergener Patent, No. 1,072,688.

[4] This patent is for a specific device for raising and lowering a lantern globe, supported at the bottom by a movable plate, which is raised or lowered by a lifting shaft extending across or around the plate. The lifting shaft is attached to the inside of one of the tubes, or part of the frame, and at one end has a projection or lever for rocking it, so as to raise and lower the globe-supporting plate, and to cooperate with a catch device arranged on the inner side of the side tube, to which it is firmly attached. The novelty of the invention rests in the lifting arrangement positioned between the side tube and the globe, and in the adaptation of the catch plate secured to the tube on the inner side thereof, and having an outwardly turned locking face against which the lever bears. The claims in issue are the fifth and seventh to fourteenth, inclusive. It will suffice to set out claim 5 which reads as follows:

"5. The combination with a tubular lantern frame and a globe support movable up and down therein, of a flexible transverse lifter shaft connected with said globe support and provided with a lifting lever, which is arranged on the inner side of one of the side tubes, and a catch plate secured to said tube on the inner side thereof and having an outwardly turned locking face, against which said lever bears with an inward pressure, substantially as set forth."

Claims 7 and 8 relate to details for attaching the catch device to the side tube by projecting the convex ends of the arms thereof into the tube, while claims 9 to 14 particularize the construction and arrangement of the catch or holding device.

As the prior art discloses somewhat similar instrumentalities for achieving the result of the patent in suit, the claims in controversy are limited to the specific forms and instrumentalities described for holding the globe on the plate and for raising or lowering and tilting the same. But in the prior art structures, the Schlafly and Everett devices, the lifting or locking device was attached to one side only of the lantern, and had no shaft extended across the lantern and under the globe-supporting plate. In structures having a lifting lever journaled in one side of the frame it was necessary to use a gage for determining the position of the bearings and catch plate, and for attaching the lift on the outside of the frame, while in the patent in suit the arrangement of the catch device on the inside enabled combining the catch plate and bearings with the frame, thus facilitating the adjustment thereof. The parts can be readily joined together and attached to the inner side of the tube by unskilled labor, while skilled labor was required to properly align and solder the lift and bearings on the outer side of the frame, as shown in the Everett patent, No. 815,276, and in the Dietz patent, No. 655,328.

Complainant also points out that, by putting the catch device on the inside of the tube, the lift or lever was in a protected position, while lifts placed on the outside of the frame were easily bent or disarranged by contact. These advantages were slight, but a new and novel result was nevertheless attained by the patent in suit.

Several prior patents and structures were cited by defendant to anticipate some, or all, of the claims in controversy, especial importance being attached to the Dietz and Everett patents; but as they related in the main to holding devices on the outside of the tube away from the shaft bearing, instead of on the inside near the globe, and as they were not formed in the same piece with bearing for the shaft as in complainant's patent, they are not anticipatory. Nor are there any features or elements shown in the prior patents or publications requiring voiding the claims in suit as mere aggregations.

The defendant, in its tubular lantern of the cold blast type, employs the precise structure described and claimed herein—i. e., the lifting shaft on the outside, and the catch arranged on the inside of the tube in the same way as in the Bergener patent—and the identical result is achieved.

Unfair competition was also alleged; but, as no actual deception was proved, this allegation will not be considered.

A decree may be entered for defendant, holding the McArthur patent, No. 42,488, invalid and not infringed, and patent to Erb, No. 962,135, and patents to Bergener, Nos. 962,114 and 1,072,688, valid and infringed by the defendant Burr & Starkweather Company, with two-thirds costs and disbursements.