## KNAPP v. WILL & BAUMER CO.

(District Court, N. D. New York. October 7, 1918.)

1. PATENTS ⬥⟿328—VALIDITY AND INFRINGEMENT—DESIGN FOR CANDLE.

The Knapp design patent, No. 44,480, for an ornamental design for a candle, shows a new combination of old elements, which discloses invention; also *held* infringed by a candle which has substantially the same structure and design, producing the same general effect on the beholder.

2. PATENTS ⬥⟿41—INVENTION—DESIGN—NOVELTY.

A design, to be patentable, must disclose originality and the exercise of the inventive faculty; but invention may reside in a new combination of old elements, such as to give a new and an ornamental effect.

3. PATENTS ⊚⫸174—INFRINGEMENT—PATENT FOR IMPROVEMENT.
    If a defendant appropriates a patented invention and improves upon it, and obtains a patent, his patent gives him an exclusive right to the improvement, but no right to use the invention of the prior patent.

4. PATENTS ⊚⫸252—INFRINGEMENT—DESIGNS.
    It is not necessary to constitute infringement of a design patent that the similarity be so precise that every purchaser would be misled, but it is sufficient if ordinarily the ordinary purchaser would be.

In Equity. Suit by Edward J. Knapp against the Will & Baumer Company. On final hearing. Decree for complainant.

Suit in equity to restrain alleged infringement of design United States letters patent of August 12, 1913, to Edward J. Knapp, No. 44,480, and for an accounting.

Harry de Wallace, of Syracuse, N. Y., and Wm. G. Henderson, of Washington, D. C. (W. B. Matterson, of Syracuse, N. Y., of counsel), for plaintiff.

Arthur E. Parsons, of Syracuse, N. Y. (Howard P. Denison, of Syracuse, N. Y., of counsel), for defendant.

RAY, District Judge. [1] The patent in suit, United States letters patent No. 44,480, dated August 12, 1913, and issued to Edward J. Knapp, the complainant, is for a design and the claim reads:

"The ornamental design for a candle as shown and described."

The specification contains the following description:

"The design, as illustrated in the drawing, is a pillar or column, substantially square in cross-section, mounted upon a substantially cylindrical longitudinally fluted pedestal, and surmounted by a bell-shaped cap, with its base lines set back from the square edges of the pillar top."

We have then the following elements *in combination,* which make up the patented design or ornamental candle, and each element must be deemed material, viz.: (1) The pillar or column, square in cross-section; (2) the substantially cylindrical longitudinally fluted pedestal; and (3) the bell-shaped cap, *with its base lines set back from the square edges of the pillar top.* The whole candle is made integral. In this art a bell-shaped cap surmounting the pillar or column of the candle was old. The cylindrical longitudinally fluted pedestal was also old. A *cylindrical* pillar or column was also old, as were pillars or columns of various and many other shapes. It is claimed by complaint that the *square* column was not old. The evidence shows beyond question that the so-called Cleopatra candle was old. The pillar of this candle is square, but not of the same diameter from top to bottom. It slopes and narrows the column gradually and uniformly from base to top. It was not made in the United States, so far as appears, but was imported, and sold and used here long prior to the granting of the patent in suit.

The claim for this patent, as first presented, read: "The ornamental design for a candle *as shown."* The words *"and described"* were added by amendment after rejection by the examiner. The present specification, as above quoted, was put in by amendment in place of the following:

"Of which the following is a specification, reference being had to the accompanying drawing, forming a part thereof. The figure is a perspective view of the candle, showing my new design."

## On appeal, after rejection the applicant said:

"It is submitted that the design, consisting of the square column resting upon a cylindrical pedestal and mounted by a bell-shaped cap, whose base lines are set back from the square edges of the column, thus having an offset between the *flat* sides of the pillar and its cylindrical pedestal, and an offset at the top between the square edges of the column and base line of the cap, is not shown in any of the references cited."

## On appeal the examiners in chief said:

"There appears to be a certain unity in design between a rectangular form of the candle and that of the tip, which possesses some degree of novelty and invention."

On this the reversal seems to have been based, and it follows, I think, that the novelty found in this combination consisted, not in the square form of the candle, but in the peculiar and, as found, novel combination of the bell-shaped tip with the square column; that is, the setting back of the base of the bell-shaped cap from the square edges of the square column having flat sides. While, in view of the prior art, it may be doubted whether there is patentable invention in this combination containing this feature, I am inclined to hold the patent valid, as the presumption is in its favor. This candle is certainly attractive and ornamental, and the combination is new. Complainant's candle is not designed for use as a light giver, a burner, but as an ornament. As compared with the round candle, the square candle as a burner, or for lighting purposes, would be and is inferior. The square candle would not show utility or improvement. It would burn down faster at the sides than at the corners, and cause waste and an inferior light.

There is no prior art showing the combination of the patent, but each and every element, standing alone, is substantially old. The coach candle, Defendant's Exhibit T T, shows a bell-shaped cap set back from the rounded top edge of the column, which is cylindrical; but the shoulder is not square, but rounded and curved, forming a sort of trough between the rounded edge of the cylindrical column and the base of the bell-shaped top. Therefore the bell-shaped cap does not have its base lines "set back from the *square edges* of the pillar top." The pillar top, or top of the pillar of this "coach candle," Exhibit T T, does not have square edges or a square shoulder, as does the camplainant's candles, but still the edge of the bell-shaped top is set back from the edge of the column. As to patentability I may cite Bush & Lane Piano Co. v. Becker Bros., 222 Fed. 902, 138 C. C. A. 382 (2d Circuit), where the court said:

"The drawing of the design shows an upright piano case in the conventional form. The casual observer, unless his attention were particularly directed to the new features, would hardly be able to distinguish the patented design from many of the designs found in the prior art. However, we agree with Judge Hazel in the statement that: 'On comparison with the prior art, because of the configuration of the colums, the paneling, and the substantiality thereof, it is easily distinguishable from other upright pianos.'

253 F.—13

There are some characteristic features of the design in controversy which distinguish it from those of the prior art, although the general contour of the case is alike in all, and several of the cases of the prior art show designs which, to the ordinary purchaser, whose attention is not called to details, would seem to embody the principal features of the design of the patent. Nevertheless, having in mind the rule applicable to design patents, we cannot say that it is anticipated or void for lack of patentability."

In Grelle v. City of Eugene, Or., 221 Fed. 68, 137 C. C. A. 18, the court held:

"That each separate element in a patented design was old does not negative invention, which may reside in the manner in which they are assembled."

In Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465, the same doctrine was expressly held:

"Tested by this rule, the defendant infringes. It is true that there are some differences between the design of the complainants and the design of the defendant. But the differences are differences of detail, and not of substance. The defendant has not made a Chinese copy of the complainants' inkstand, and yet it imparts to the mind the same general appearance, which would deceive an ordinary observer into buying one inkstand believing it to be the other."

[2] It is well settled, if ever there was any question, that a design, to be patentable, must disclose originality and the exercise of the inventive faculty. Smith v. Whitman Saddle Co., 148 U. S. 675, 13 Sup. Ct. 768, 37 L. Ed. 606; Steffens et al. v. Steiner et al., 232 Fed. 864, 147 C. C. A. 56. It is also settled that invention may reside in a *new* combination of old elements, such as to give a new and an ornamental effect. This combination is ornamental, and it is *new*, in that the complainant's candle is made up of the pedestal, old, combined with a square column of equal diameter from pedestal to tip, with plain flat sides, *such* square columns being old, but not in the candle art, forming a new combination of pedestal and square column in so far as the form of the column is concerned; and the combination as a whole is also new, in that the joining of such a pedestal and column, so combined with the tip, in the manner described, is also new. This combination of these elements is a new combination, and it is ornamental. No one had made *this* combination before, or produced this effect. This art of making ornamental candles was old and crowded, and it is some evidence of invention, as distinguished from mere skill, that no one had formed this combination of old elements before. This is not the case of a *mere* choice of old forms, as the substitution of the oval shape for the circular in a lacing hook, but involves change of form of candle, and also the method and form of combining the substituted form of column with other elements. The result was a new form of candle with a distinctive and pleasing effect.

In Strause Gas Iron Co. v. Wm. M. Crane Co., 235 Fed. 126, 131, 148 C. C. A. 620, 625, the court (C. C. A. 2d Circuit), said:

"The test for invention is to be considered the same for designs as for mechanical patents; i. e., was the new combination within the range of the ordinary routine designer? We believe that any one starting to design sadirons, with the art before him, and governed only by considerations of proportion and plan, would have had no difficulty in making the plaintiff's iron."

In Steffens et al. v. Steiner et al., 232 Fed. 862, 147 C. C. A. 56, the court (C. C. A. 2d Circuit) held:

"To sustain a design patent, the design must involve something more than mere mechanical skill; and whether the assembling of old design elements into one unitary design is patentable depends on whether, in the particular case, such assembling rises to the level of invention and the result possesses originality and beauty."

There is this to be said: That in complainant's candle, as in all candles, the column rests upon the pedestal and the tip upon the column. This is the order of assembly in all candles. Having selected a square form of column of equal diameter from base to top, with plain flat sides and without ornamentation of any kind, it was joined in the old way to the old and well-known pedestal before described. Then came the selection with the aid of the prior art of a tip and also the adoption of a mode or form of combining it with the column. Here we find a departure from the prior art and a new combination in one harmonious, ornamental whole. We find some degree of originality and beauty. This involved more than mere selection and assemblage. All this was not mere mechanical act. A skilled mechanic or candle maker might have hit this combination, and he might not. In a somewhat crowded art, no one had.

Having arrived at the conclusion that the patent is valid, the question is presented: Does the defendant infringe? The defendant's candle has the same cylindrical longitudinally fluted base or pedestal as does complainant's candle. Its pillar or column is square in cross-section, except that a depressed panel is cut out from the pedestal to the top of the column on each of the four otherwise flat sides. The sides of defendant's candle are not flat, because of this depression. This depression occupies about two-thirds of the width of each side. Still the general form of the column is square. Where the column joins the bell-shaped cap, which is substantially identical with complainant's cap, there is no shoulder, except at each of the four corners of the column. There is no setting back of the base lines of the bell-shaped cap from the square edges of the pillar top, except at and adjoining the four corners. There we find this setting back. Place the two candles side by side, or at a short distance from each other, and we perceive this difference in the structural appearance of the two candles; but place them at a considerable distance from each other in the same room, and from the observer, and the general appearance and effect is the same. We would not, under such circumstances, note the difference in appearance or form of the candle, unless examining for a difference. It would make a difference whether the room were brilliantly or dimly lighted in noting this difference. It should also be noted that defendant has cut off the corners of its bell-shaped top, or tip, giving it eight sides (not all of the same width, however), instead of four sides; but this does not change the general appearance.

On the market the horizontally fluted cylindrical pedestal is attractive in the combination. When the candle is in its stick or socket, this is to an extent immaterial, as the pedestal is mostly hidden from

sight. But it was old, and defendant had the right to use it. The bell-shaped cap was old, and defendant had the right to use it. I think the substantially square candle, as shown in the Cleopatra candle, was old, and that defendant had the right to use that form. "Modern Soaps, Candles and Glycerin," by Lamborn, published in 1906, says (page 526):

> "Candles are molded in a great variety of shapes; the most common shape being that of a plain cylinder of varying diameter and length. A great variety of ornamental forms for religious and decorative purposes are molded in numerous prismatic cross-sections, as square, triangular, octagonal, etc. They may also be molded, longitudinally or spirally fluted. The latter form was originally turned in a lathe, but is now made in molds, and in ejecting the candles from such molds the candles are made to rotate. Decorated candles are of every color, shape, and design. Red, green, pink, white, and yellow are the most popular colors. The decorations are made of wax, and put upon the candles by hand. The wax is colored, so as to give the decorator's artistic taste the widest possible range."

The combination of these elements, substantially as shown, except the setting back mentioned, and the plain, square column of equal diameter from its base to its top, was old (see the Cleopatra candle), and defendant had the right to use that combination; but the peculiar formation of the top end, where the bell-shaped tip joins the column in combination with a square column of uniform diameter from base to top, was new. This the defendant, in view of the patent, had no right to appropriate and use. Defendant did appropriate this set-back formation, so far as the four corners of the candle are concerned, but not in its entirety, for it cut away a portion of each of the flat sides of the column, making the depression mentioned, and cut back up to the very base of the bell-shaped cap. Hence, except at the corners, as stated, there is found in defendant's candle no setting back of the base lines of the cap from the square edges of the pillar top. Defendant also appropriated in his combination the square form of equal diameter from base to top of the column, cutting a depressed panel therein on each side.

It is not the case of "a Chinese copy," but still complainant had a new and a novel design, pleasing to the eye, and defendant has copied it, with the changes mentioned, leaving the same general impression on the beholder who sees the two. The resemblance is such as to deceive the ordinary observer and purchaser. It has not used the Cleopatra candle column. The evidence conclusively shows that for a long time defendant purchased these ornamental candles from the complainant, or rather from a company making ornamental candles in accordance with the design of this patent and sold them in its business. The candles so purchased had been marked "Patented" by complainant; but this, after a time, was omitted in the candles furnished defendant for its trade at its request. The defendant finally concluded to make and sell a candle of its own make, which it did, and thereafter made and sold the candle alleged to be an infringement of complainant's patent and candle. Defendant used cartons and labels similar to complainant's; but this not material, as unfair competition is not involved in this case. The defendant created the differences between the two candles intentionally. Can we say it

was an improvement on the prior art simply (aside from complainant's candle), and not an infringement? Hardly. In defendant's candle we have the same general combination of the same elements which we find in complainant's, with the same general appearance and effect on the eye, but with the change made by cutting out a depression in each of the four flat sides of the candle, and which cutting out of necessity does away with a continuous setting back of the base lines of the bell-shaped cap from the square edges of the pillar top. But still that setting back is present at the four corners and for a little distance to the right and left therefrom.

[3] Defendant says the complainant's candle belongs to the "Mission" age or period in candle making, and that defendant's candle belongs to the "Colonial" style or period in the same art; that the one is distinctive and clearly distinguishable in structure and appearance from the other. This I cannot see. The slight change in the shape of the bell-shaped top has no substantial effect on the general appearance. The defendant has a patent for its design. This is evidence of a possible improvement in design clearly. To it I have called attention. But I think it well settled that, if a defendant appropriates an invention, be it a mechanical apparatus or a design, for which a patent has been granted, and improves upon it and obtains a patent, his patent covers his improvement, to which improvement he has the sole and exclusive right; but this subsequent patent does not impair the rights of the prior patentee, nor does it confer on such subsequent patentee any right to use or appropriate such prior invention duly patented. If he does so appropriate it, and use or make it in connection with his improvement, he infringes. In short, a valid patented invention is in no way annihilated or impaired by an improvement thereon by another and duly patented, and which improvement, in order to be of use, necessarily must be used with the invention of such prior patent. A valid pioneer invention, or an improvement thereon, may be improved upon as matter of course, and the improvement may be patented if it discloses patentable invention; but the improver cannot avail himself of the prior invention and appropriate it, in order to make his patented improvement available and of value to himself, without the consent of the prior inventor. If he does, he is liable as an infringer. Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017. If A. has obtained the right to the use of the original invention, he may also obtain the right to use the improvement, and add it, and thus have the advantages of both. The invention of an ornamental candle, in this day, does not revolutionize the world, nor does an improvement thereon; but it is of value to the inventor of the ornamental design, and, when patented, if patentable invention is disclosed, becomes his property. Improvements are welcome, and, as stated, are patentable, if invention is disclosed.

In this case the difference between the actual design of the pedestal and column of the Cleopatra candle and the pedestal and column of the complainant's candle are not very great, and still are quite marked. This is true of the general appearance of the two. The

evidence is convincing that complainant's candle met with great favor and large sales. The defendant for a time was a large purchaser and seller of these candles. This is some evidence of invention. I cannot find, however, that the differences between defendant's candle and complainant's candle were intended to be merely colorable, and were made to avoid a claim of infringement. Assume such changes were made in good faith, and with the firm belief defendant's candle does not infringe. This is no defense, if it in fact has substantially all the elements of complainant's candle in the same combination, producing the same result in the same way; that is, the same general appearance to the eye of the beholder. The test of infringement of a design patent is stated in Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731. It is there said:

"The acts of Congress which authorize the grant of a patent for designs contemplate not so much utility as appearance; and the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture or article to which it is applied. It is the appearance to the eye that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense, and identity of appearance, or sameness of effect upon the eye, is the main test of substantial identity of design. It is not essential to identity of design that the appearance should be the same to the eye of an expert. If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same—if the resemblance is such as to deceive such an observer, and sufficient to induce him to purchase one, supposing it to be the other—the one first patented is infringed by the other. * * * We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, the first one patented is infringed by the other."

Subsequent cases are to the same effect. See quotation from Ashley v. Weeks-Numan Co., supra.

[4] It is not necessary that the similarity be so precise that every purchaser would be misled; but it is sufficient if ordinarily the ordinary purchaser would be. It is not what an expert would say or discover, or what a court may discover, by way of structural differences, but what is the general appearance and the causes thereof. Of course, there is a general resemblance between all candles, and at some little distance most, and possibly all, of the differences between round candles and square candles would not be observed. So of the differences and similarities noted. But no one will contend that infringement of a design patent does not occur because of the fact that at a distance we note no difference in appearance, structural or otherwise. Nor would we say one design patent infringes another for the sole reason the general appearance and effect is the same at a little distance, or at a considerable distance. The design as well as general appearance must be there. Gorham Co. v. White, 14 Wall. p. 526, 20 L. Ed. 731. This defendant, with its candle, has substantially the same structure and design as complainant, producing the same general appearance and effect on the beholder. If the slight structural changes made by defendant had produced a substantially

different appearance in the two candles, both to purchasers and those seeing them when in use, we could not find infringement.

I have examined and compared quite a number of ornamental candles in evidence, some of which have ornamentation other than the general from and design of the candle itself. Exhibits O, P, and R are candles the general form of which is nearly square in cross-section, but each has rounded corners and a deep, angular groove in each of its otherwise flat sides. The pedestal in each is smooth, as is the tip, and this portion slopes with a slight curve gradually from the sides of the column to the wick. The tip of each may be said to be bell-shaped, but the structural formation and general appearance are quite different from those of complainant's candle. The design is markedly different. Exhibit G is twisted, and has a bell-shaped tip, which is set back from the sides of the column; but it was never square in cross-section (although nearly so), as it has rounded corners, and the sides, otherwise flat, are depressed, made concave. It is of greater diameter at the base than at the top, and has no pedestal.

I am constrained to the opinion that complainant's patent is valid, and infringed by defendant, giving to his patent the limitations we should, in view of the prior art.

There will be a decree accordingly.