33 C.C.P.A.(Patents)

### In re FAUSTMANN.
### Patent Appeal No. 5180.

Court of Customs and Patent Appeals.
May 7, 1946.

Baldwin & Wight, of Washington, D. C. (Donald M. Wight, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellant applied to the United States Patent Office for a patent for his claimed new, original and ornamental design for a typewriting machine. The Primary Examiner rejected the claim in said application and cited the following references: Bills D. 93,152, August 28, 1934; Lentz D. 134,305, November 10, 1942; Ostrey 1,828,939, October 27, 1931; Fairweather (Br.) 17,892, November 15, 1909; and stated:

"The essential features of applicant's design reside in the keyboard and space bar of a typewriter, as shown in full lines on the drawing. The key tops and the space bar are without surface ornamentation and therefore patentability must of necessity reside in the configuration of these elements. Applicant states that his 'key tops are straight across the front and curved at the rear'. In this connection attention is directed to the key tops of the Lentz patent which applicant admits have 'rounded front edges or faces and straight rear edges or faces'. It is held that it would not amount to invention to make these key tops slightly thinner and turn them around on the keyboard, especially in view of the thickness of the key tops as shown by the Fairweather patent.

"As to the configuration of the space bar, it is held that it does not show invention over the configuration of the space bar as shown by the Ostrey patent which has beveled corners. Also, attention is directed to the configuration of the space bar shown in the broken lines in the Bills patent. It is believed that anyone skilled in the art could produce a keyboard for a typewriter having key tops and a space bar of the configurations as shown without being entitled to a patent monopoly thereon. In this connection attention is directed to the decisions of Knapp v. Will & Baumer Co. [2 Cir.], 273 F. 380; In re Eppinger, 94 F.2d 401, 25 C.C.P.A. [Patents], 843; 1938 C.D. 257; and In re Hall, 69 F.2d 660, 21 C.C.P.A., Patents, 937, 1934 C.D. 283.

"It is thought that the rejection on the art should stand."

Upon appeal to the Board of Appeals it had the following to say:

"We consider applicant's design to be so different in appearance from that of Lentz as not to be anticipated thereby.

"The question as we see it is whether applicant's keyboard is so different in appearance from a keyboard having the key tops of the British patent as to constitute a patentable difference in design. The principal difference is that the key tops of the British patent are relatively straight across the back edge and curved at the front and applicant's key tops are relatively straight across the front edges and curved at the back. We do not think such turning about of the key tops creates any substantial difference in the ornamental appearance of the keyboard. The two wider key tops at each end of applicant's keyboard do not materially affect the appearance of the design as a whole. The space bar is the same in appearance as that of Bills, and also does not materially affect the design as a whole.

"We agree with the examiner that applicant's design does not constitute invention over the disclosures of the references cited.

"The decision of the examiner is affirmed."

From this decision of the board affirming the rejection of the examiner appellant has here appealed.

Since the decisions below emphasize the question of appearance, as do most design patent decisions, it is thought proper to reproduce here appellant's design and the designs disclosed in the references with the exception of the Ostrey patent.

Appellant contends that the decision of the board, in effect, reversed that of the examiner as to the applicability of the reference, Lentz, and therefore urges that it be given no consideration here. The Solicitor for the Patent Office did not discuss this question. It is not very clear just what effect should be given to the board's decision in this respect because it will be

APPELLANT'S DESIGN

FAIRWEATHER

Fig.1.

LENTZ

BILLS

noticed that the examiner, in discussing the Lentz reference, considered it in connection with the Fairweather patent. It is true the board stated that the Lentz patent did not anticipate appellant's design and made no further reference to the Lentz patent except to say that applicant's design does not constitute invention over the disclosures of the references cited. We are of the opinion that the board did not intend to hold that the examiner regarded the Lentz patent as completely anticipatory of appellant's design, nor do we think it intended to eliminate a consideration of the Lentz patent for whatever it might be worth. The gist of the decision of the board rests upon the proposition that what appellant has done did not so materially affect the appearance of the design as a whole when considered in connection with the prior art and did not constitute invention so as to warrant the issuing of a patent to appellant.

Under well-settled practice of the Patent Office, if a design patent is sought upon the keyboard of a typewriter it is necessary to claim this improvement in connection with a typewriter as a whole, the machine being shown, with the exception of the keyboard, in dotted lines.

Appellant, in his application, states that the dominant feature of his design resides in the portion of the machine shown in solid lines on the drawing.

It will be observed that appellant's design shows the key tops with straight front edges and straight and parallel side edges connected to the front edges by rounded corners, and widely curved convex rear edges, and that the keys at the corners of the keyboard are wider than the other keys and have straight rear portions extending between rounded rear corners. The elongated space bar has a straight rear edge and a straight front edge central portion and smoothly curbed front edge end portions.

Appellant's space bar is almost identical with that disclosed on the Bills design patent, and the Lentz patent shows the keys with the straight edges in the rear and the rounded edges in front. Ostrey shows a space bar comparable to appellant's ex-

cept that it has its ends tapered along the rear longitudinal edge. The latter is a mechanical patent and relates to the keyboard alone.

The British patent to Fairweather shows key tops with rounded front while the back edge of the key tops is concave.

Appellant has argued at considerable length here that his design is new and novel and that the tribunals of the Patent Office have not found to the contrary; nor, he contends, did they deny that it was ornamental. He states that he did not follow the teaching of any of the references but conceived a design which the ordinary skilled worker in the art would not have been able to produce by merely drawing upon the teachings of the reference. He calls attention to the fact that the back line of the Fairweather key is not a straight line as stated by the board. In effect, appellant urges that the Patent Office tribunals erred in the consolidation of certain features of the prior art to justify its holding that appellant's design was not intentive over the cited prior art.

The Solicitor for the Patent Office has pointed out that in Re Eppinger, 94 F.2d 401, 25 C.C.P.A., Patents, 843, a design patent case, it was held that it was proper for the Patent Office tribunals to combine references for the purpose of showing lack of invention.

It would be easy to conceive of an article of manufacture being made in such form as to combine various features and shapes of the prior art and yet being of sufficient ornamental improvement over the prior art as to warrant its being the basis for a design patent. To lay down any hard and fast rule as to when invention exists in a design patent application would be a difficult, if not impossible, task.

It must be remembered that the question of utility which characterizes a mechanical patent is not a matter for consideration in design patent applications. The statute dealing with mechanical patents provides that a patent may be granted to "any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter," etc., 35 U.S.C.A. § 31, while the design pat-

ent statute authorizes the granting of a patent for a design to any person who has "invented any new, original, and ornamental design for an article of manufacture," etc. 35 U.S.C.A. § 73.

▮ Thus it is seen that the authority for granting a design patent is based upon four propositions—the design must be new, original, ornamental, and must be the product of invention.

The design patent statute further provides that the patent is granted upon the "payment of the fees required by law and other due proceedings had, the same as in cases of inventions or discoveries covered by section forty-eight hundred and eighty-six," the section relating to mechanical and other patents.

Rule 81 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix, provides: "The proceedings in applications for patents for designs are substantially the same as in applications for other patents. * * * "

The Patent Office and the courts have in some particulars found it was difficult to comply with the mandate of the statute and apply the same principles in considering the questions that would arise in connection with applications for design patents as are applied in the case of inventions or discoveries covered by section forty-eight hundred and eighty-six.

The greatest difficulty encountered has been in determining the question of the existence of invention. Other problems have presented difficulties in other respects—for instance, with reference to the question of reduction to practice, briefly discussed in a very carefully considered case, Dieterich v. Leaf, 89 F.2d 226, 24 C.C.P.A., Patents, 1138. For a discussion of the history of design patent legislation see In re Schnell, 46 F.2d 203, 18 C.C.P.A., Patents, 812.

▮ It has been a uniform holding of this court, following the settled law announced by other courts, that the production of a design patent must involve the element of invention and it is well settled that no lesser degree of inventive skill is required in the production of designs than other kinds of patented articles (cases cited and discussed infra). This is said notwithstanding the fact that the design patent law was enacted for the purpose of encouraging and promoting ornamentation while utility is the dominant feature of other patents. Both productions require novelty.

It therefore is clear that while invention must exist in design as well as other patented articles the determination of the existence of the invention must necessarily be approached from a different angle. Utility is left out of the one and ornamentation not included in the other. Just how much ornamentation over and above that of the prior art is to be regarded as essential cannot be stated with any degree of definiteness. An article may be produced by an artist which possesses such ornamental merit as to lend it patentable dignity even though he has done nothing more than to take old lines, old shapes and old forms and put them together so as to make a new article or design pleasing to the eye.

▮ In mechanical patents a combination of old elements is not invention unless there is a new and unexpected coaction between the consolidated elements producing a new result not flowing from the individual characteristics of each of the elements. Now, in a design combination such as we have at bar, if coaction between the consolidated elements is to be regarded as necessary it must flow from a new, unexpected, ornamental and pleasing appearance brought about by the putting together of the old elements. Applying that principle in the case at bar, we, like the tribunals below, while cognizant of appellant's new consolidation, involving, for the most part, what seems to be minor features relating to typewriter keyboards, do not think that he has produced any new and ornamental design of a keyboard, or a typewriter, which rises to the level of invention.

One of the early and important cases on this subject is Gorham Company v. White, 14 Wall. 511, 524, 81 U.S. 511, 20 L.Ed. 731, involving infringement of a design patent for the handles of flat tableware. While the court was not unanimous and the main question was whether or not the design patent had been infringed, certain basic prin-

ciples were expressed which seem pertinent here. Justice Strong, speaking for the majority, said that Congress intended to encourage "the decorative arts" and that:

"They [the acts of Congress] contemplate not so much utility as appearance, and that, not an abstract impression, or picture, but an aspect given to those objects mentioned in the acts. * * * And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form. The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. It therefore proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them. Manifestly the mode in which those appearances are produced has very little, if anything, to do with giving increased salableness to the article. It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly, but, in whatever way produced, it is the new thing, or product, which the patent law regards. To speak of the invention as a combination or process, or to treat it as such, is to overlook its peculiarities. As the acts of Congress embrace only designs applied, or to be applied, they must refer to finished products of invention rather than to the process of finishing them, or to the agencies by which they are developed. A patent for a product is a distinct thing from a patent for the elements entering into it, or for the ingredients of which it is composed, or for the combination that causes it."

The Gorham case was subsequently discussed in an opinion by Chief Justice Fuller in the famous saddle case, Smith v. Whitman Saddle Company, 148 U.S. 674, 13 S.Ct. 768, 769, 37 L.Ed. 606. The statute at the time that case was decided read, "Any person who, by his own industry, genius, efforts, and expense, has invented and produced any new and original design," etc. It will be noticed that the statute then read "invented and produced," whereas the statute at bar does not contain the word "produced." But since the word "invented" and the word "produced" were connected by the word "and" and not the word "or" the existence of invention was required then as now.

The opinion quotes "Mr. Justice Brown" in Northrup v. Adams, Fed.Cas.No.10,328, 1877 C.D. 322, 12 O.G. 430, as follows: "To entitle a party to the benefit of the act, in either case [i. e., for a design or for a mechanical patent], there must be originality, and the exercise of the inventive faculty. In the one there must be novelty and utility; in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius,—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in their new role, is not invention."

The opinion then proceeds to state: "Many illustrations are referred to,—as, for instance, the use of a model of the Centennial building for paper weights and ink stands; the thrusting of a gaspipe through the leg and arm of the statue of a shepherd boy, for the purpose of a drop light; the painting upon a familiar vase of a copy of Stuart's portrait of Washington,—none of which were patentable because the elements of the combination were old. The shape produced must be the result of industry, effort, genius, or expense, and new and original as applied to articles of manufacture. Foster v. Crossin, C.C., 44 F. 62. The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form, and simply put it to a new use any more than he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the

exercise of the imitative faculty, and the result is in effect a new creation, the design may be patentable."

In Re Hall, 69 F.2d 660, 661, 21 C.C.P.A., Patents, 937, we stated that: "It is not enough that a design be new, original, and ornamental. It must be also the result of the inventive faculty. In re Walter, 39 F.2d 724, 17 C.C.P.A., Patents, 982."

The Circuit Court of Appeals, Second Circuit, in Knapp v. Will & Baumer Co., 273 F. 380, 381, had before it the question of the validity of a design patent for an improvement in candles. The design was for a candle the column of which was "substantially square in cross-section, mounted upon a substantially cylindrical longitudinally fluted pedestal and surmounted by a bell-shaped cap." It was held that what the appellant, Knapp, had done, in view of the prior art, did not amount to invention. The opinion states:

"It is true that invention may reside in a new combination of old elements. Every new combination of old elements, however, is not patentable. But as this court said in Steffens v. Steiner, 2 Cir., 232 F. 862, 147 C.C.A. 56:

"'The question in the case at bar is not whether a design patent can be sustained, although each separate element in the design may be old, but it is whether what has been done in assembling the old elements in the new designs rose in these particular cases to the level of invention.'

"And in Strause Gas Iron Co. v. William M. Crane Co., 2 Cir., 235 F. 126, 148 C.C.A. 620, this court again said: 'The test for invention is to be considered the same for designs as for mechanical patents; i. e., was the new combination within the range of the ordinary routine designer?' "

The opinion continues, in language which we think is quite pertinent to the issue at bar: "We are quite at a loss to find in the patent in suit anything 'akin to genius' in what the patentee did. We find nothing beyond the ability of the ordinary routine candle maker. What was done did not rise to the level of invention."

Chief Justice Fuller in Smith v. Whitman Saddle Company, supra, could have appropriately quoted further from the Northrup v. Adams case, supra, where attention was directed to a change relating to the standard of invention in Patent Office consideration of design patent cases. We quote: "It is true, patents have apparently been issued for designs frivolous in themselves, or new adaptations of old designs; but, as remarked in an excellent opinion by Commissioner Leggett, in the case of Parkinson (Simons, Design Patents, p. 101), 'the practice of the office in granting design patents has been not only liberal, but lax.' In the later decisions of the office, a stricter construction has been given to the law, and one more consonant to the familiar principles applied to mechanical patents."

In the instant case, applying the principles of the Knapp case, supra, we can see nothing in what appellant has done that is beyond the ability of the ordinary skilled mechanic or designer of typewriters. We agree with the Patent Office that, in view of the prior art, the inventive faculty was not exercised in producing appellant's keyboard.

The decision appealed from is affirmed.

Affirmed.