## In re GLAFCKE.

(Court of Appeals of District of Columbia. Submitted November 22, 1921. Decided January 3, 1922.)

### No. 1449.

1. Patents ⬅️17, 37, 66—Application for patent on cobbling outfit held novel, to involve invention, and not anticipated.

A cobbling outfit, consisting of a tubular post or pedestal having a socket to support lasts of different sizes and shapes, and so adjusted that the last would revolve freely, and a binding head so adjusted as to slide and rotate freely, and having arms with an attached strap intended to hold the shoe in place, and tightened by stepping on the arms, which would lock automatically, *held* novel, and to involve invention, and not mere mechanical skill, and not anticipated by devices in which the last would not revolve freely, and the head would not slide or rotate freely.

2. Patents ⬅️36—Doubt should be resolved in favor of invention.

A doubt as to whether a device constitutes an invention or a mere mechanical improvement should be resolved in favor of invention.

**3. Patents ⊙⇒22—Use of snap to attach strap, or use of tube, instead of solid rod, not invention.**

The use of a snap for the purpose of attaching a strap to a part of a cobbling outfit, or the use of a tube, instead of a solid rod, for a pedestal, does not constitute invention.

Appeal from a Decision of the Commissioner of Patents.

Application by Charles L. Glafcke for a patent. From a decision rejecting the application, the applicant appeals. Affirmed in part, and reversed in part.

Joshua R. H. Potts and B. G. Richards, both of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

VAN ORSDEL, Associate Justice. [1] This appeal is from the decision of the Commissioner of Patents rejecting appellant's application for a patent, the claims of which are illustrated by claims 3 and 6, as follows:

"3. A cobbling outfit comprising a pedestal; a tubular socket at the upper end of said pedestal; a last provided with a stem removably fitting within said socket; a head freely slidable vertically on said pedestal, laterally extending arms on said head; a leaf hinged at one end to the under side of one of said arms and having an oblong opening therein slidably engaging said pedestal; and a looped strap secured to said head and passing over said last, substantially as described."

"6. A cobbling outfit comprising a smooth cylindrical pedestal; a last at the top of said pedestal; a head loosely mounted on said pedestal and capable of free rotatable and slidable movement thereon; means for automatically securing said head in adjusted positions on said pedestal; and a flexible binding loop secured to said head and passing around said last, substantially as described."

The construction consists of a base, on which stands a tubular post or pedestal having a socket at the upper end to receive and support cobblers' lasts of different sizes and shapes. The receiving socket is so adjusted that the stem of the last will revolve freely therein. A binding head is so adjusted on the pedestal that it will slide and rotate freely thereon. The head contains two arms extending laterally to the pedestal, to which is attached the ends of a strap which extends over the last to hold firmly in position a shoe placed thereon. When it is desired to tighten the strap about the shoe, the operator steps upon one of the lateral arms and forces it down the pedestal until the strap is drawn taut. Underneath one of the arms is a locking leaf pivotally mounted, which slidably engages the pedestal, so as to permit a free downward movement, but automatically interlocks with the pedestal to prevent an upward movement. Thus the shoe is held firmly on the last until the operator wishes to remove it, when he touches the locking leaf at the free end with his toe, and the head is released and moved upwards sufficiently to loosen the strap and permit of the removal of the shoe.

Two references were cited in the Patent Office against the patentability of appellant's device. It is conceded that appellant has made a

valuable improvement in the art, but it was held not sufficiently novel to amount to invention.

In the reference to the Brown patents, No. 305,506, September 23, 1884, and No. 353,200, November 23, 1886, the last is so adjusted to the pedestal that it will not revolve thereon, and the head consists of a lever permanently pivoted at one end to the pedestal. The ends of the strap are connected with the lever. To the lever is connected a locking plate, which, when the lever is pressed downward to tighten the strap, offers no resistance to the downward movement, but engages with the pedestal, so as to prevent an upward movement.

In the reference to the Wicks patent, No. 342,155, May 18, 1886, the last will not revolve on the pedestal, and the head is arranged so that it can only ascend and descend the pedestal in a certain position, since the pedestal is supplied on each side with a row of lugs with which the head, when pressed down sufficiently to tighten the strap, is revolved by the operator into engagement. To release the shoe, the operator must revolve the head out of engagement with the lugs on the side of the pedestal into the track of vertical movement and manually raise it until the strap is relaxed.

Neither of the references, nor both combined, is a complete anticipation of appellant's invention. Neither contains the element of the last stem so adjusted in the socket at the top of the pedestal as to permit of the free rotation of the last. In neither case will the head slide freely on the pedestal, and in neither case will the head rotate freely on the pedestal.

In the Brown patents, the lever is permanently pivoted at one end to the pedestal, which manifestly prevents rotation and limits the vertical movement to the radial action of the lever. In the Wicks patent the vertical action is limited to a fixed course, and the rotary movement is limited to a position which will bring the head into engagement with one of the lugs permanently attached in vertical rows on opposite sides of the pedestal.

It will be observed that appellant's device is a vast improvement over the prior art. The rotation of the last on the pedestal, the free vertical and rotary movement of the head on the pedestal, the ability to operate it with either foot, leaving the hands free to properly adjust the shoe, the application of the tension centrally and in line with the pedestal and last, and the wide range of adjustment which is permitted both vertically and rotatively, are not elements found in either the Brown patents or the Wick patent.

It was held by the tribunals below that the improvements of appellant were so obvious as to amount merely to the application of mechanical skill. It may be suggested that the inventions of Brown and Wicks were patented in 1886, and more than a generation passed before any one discovered these improvements, which the officials below now denominate as obvious mechanical changes. It remained for appellant to discover and put in operation that which had so long been delayed through lack of an inventive mind to comprehend its value or the means of accomplishing it. The rule in such cases is well illus-

trated by Chief Justice Taft in the recent case of Hildreth v. Mastoras, 256 U. S. ——, 42 Sup. Ct. 20, 66 L. Ed. ——, as follows:

"The history of the art shows that Dickinson took the important, but long-delayed, and therefore not obvious, step from the pulling of candy by two hands, guided by a human mind and will, to the performance of the same function by machine. The ultimate effect of this step, with the mechanical or patentable improvements of his device, was to make candypulling more sanitary, to reduce its cost to one-tenth of what it had been before him, and to enlarge the field of the art."

[2] There is a twilight zone between invention and mechanical improvement, where it is sometimes difficult to determine in which scale of the balance the applicant belongs; but we have consistently held that, in a close case, we will resolve the doubt in favor of invention. As we said in Re Katzenberger, 46 App. D. C. 539:

"Where a distinct advance has been made * * * in a given art, and the question of patentability is close, it will be resolved in favor of the applicant, especially where [as here] his claims are specific."

[3] Claim 5, which relates to the attaching of the ends of the strap to the head by means of snaps, and claim 7, which calls for a tubular pedestal, should not be allowed, since it is neither invention to use snaps for attaching the ends of the strap to the head, or to use a tube instead of a solid rod for a pedestal. Neither is exclusively essential to the successful operation of appellant's device.

The decision of the Commissioner is affirmed as to claims 5 and 7, and reversed as to claims 1, 2, 3, 4, and 6.

Affirmed as to claims 5 and 7, and reversed as to claims 1, 2, 3, 4, and 6.