## PFEFFER et al. v. WESTERN DOLL MFG. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. September 12, 1922.)

No. 2970.

1. Patents ⬦328—51,559, for ornamental design for doll, held valid and infringed.

The Pfeffer design patent, No. 51,559, for ornamental design for doll, *held* valid; also not infringed by one design shown, but infringed by others.

2. Patents ⬦43—Design need not be novel in all its parts.

In design patents, as in others, novelty is not essential in each and all of the parts; but, if the design as a whole is novel, there may be patentable invention in the conception.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Genevieve Pfeffer and another against the Western Doll Manufacturing Company and others. Decree for defendants (271 Fed. 124), and complainants appeal. Reversed and remanded.

Edward S. Rogers and Allen M. Reed, both of Chicago, Ill., for appellants.

Luther Johns, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The action is in chancery to restrain defendants from infringing United States design patent 51,559, to Genevieve Pfeffer, December 11, 1917, for "ornamental design for a doll as shown." The specific infringement alleged is a doll of the design of Exhibit D filed with the bill. The cause was referred to the master, who reported findings of law and fact to the effect that the patent was valid and infringed as charged. Exceptions to the master's report were sustained, and the court found the patent invalid, dismissing the bill.

[1] The said patent, and said Exhibit D as an alleged infringement of it, were in issue in the Second Circuit. George Borgfeldt & Co. v. Weiss (C. C. A.) 265 Fed. 268. On page 269 are shown cuts of the patent design, and on page 270 a cut of Exhibit D. These illustrations are referred to in connection herewith.

The patentee testified that in June, 1917, she conceived the idea of decorating a doll, and that she chose for that purpose the "Sitting Kewpie" baby doll of the Rose O'Neill Wilson design patent 44,393 (July 12, 1913), painted on it a one-piece bathing suit and spit curls, eyes with long eyelashes, and hair, and put on its head a little silk cap with protruding ends, and in this form presented it to the Patent office. She afterwards prepared a number of other designs for the commercial doll, varying more or less from that of the patent, changing somewhat the facial expression and the position of arms and legs, omitting the bump on the head and the rudimentary wings, adding shoes to some, and to others real hair instead of the cap. On the ques-

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tions here involved, we have nothing to do with her modifications, since upon the claim of infringement we must deal with the patent design and such as the defendant made or threatened to make.

Unlike the litigation in the Second Circuit, the defense here most relied on is that of invalidity of the patent. It is persuasively suggested that the mere painting of an indistinctive bathing suit upon a distinctive form of doll for which this patentee had no claim did not involve invention. If this were all the patentee did, the conclusion of the District Court would doubtless have been correct. There appears nothing distinctive or unusual about the bathing suit of the patented design; it represents just such a usual and ordinary garment as a small child might wear, and there would be no more of invention or originality in applying a one-piece bathing suit to a small child than to the somewhat noted patent design "September Morn." While there is nothing in the patent to indicate that the garment is to be painted on, the fact of painting it would be no element of the invention, in view of the long and well known practice of painting upon dolls garments, hair, and other ornamentation.

[2] A bathing cap applied to a baby bather is not new with this patentee. Spit curls are old, and the long line of eyelashes appeared long before in the published Nell Brinkley pictures of baby faces on grown-ups and on Cupids. But in design patents, as in others, the novelty is not essential in each or all of the parts. If the design as a whole is novel, there may be patentable invention in the conception.

Had the design for the first time shown also the Kewpie baby doll in the sitting posture, the patent would undoubtedly be good; but it is not correct to say that no possible ornamentation of the old sitting Kewpie baby doll could involve originality and invention. While the attiring of a baby doll with one or several of the ordinary habiliments usual to small children may not involve invention, there may be such use and combination of these and other ornamental features in which the quality of invention inheres. After all is said and done, the question of patentable novelty of a design is largely a matter of impression, derived from visualizing the design. The ornamentation of this doll does not present merely the usual garments of a baby. The cap with large flaring ends is quite out of normal proportion; the spit curls and long lines for eyelashes are out of the normal as applied to a baby. The design as a whole appears grotesque, unusual, and striking, and we cannot conclude that in its conception invention was not involved.

On the subject of infringement, the evidence is not entirely clear. The answer admits that the defendants were about to make dolls like certain designs of the plaintiff, but does not admit that these were the designs of the patent.

The inventor in her testimony insists that she was the first to decorate such a doll by putting any clothes on it, and that although her design shows only bathing suit and cap as the garments, her patent should be held to cover any and all garments which may be put on such a doll. This is not tenable. The sitting Kewpie baby doll being no part of this patentee's invention, her design patent for garments and other decorations must be limited substantially to that ornamen-

tation which the patent shows. Unlike an invention for a mechanical device, a design patent involves appearance only, and as said in the decision above cited:

"The question of infringement turns upon whether there is identity of appearance, whether the effect produced upon the eye is the same, whether there is substantial identity of design."

While the ensemble of the design must be considered, we cannot omit from the consideration the parts which make up the whole. If from a given design the cap were entirely omitted, we do not think that which remains would be the design of this patent; and so, also, if the bathing suit were left off. Exhibit D, while showing some perhaps immaterial modifications of the patent in the arms, legs, and feet, does' wholly omit the cap and spit curls, and there is a luxuriant mass of real hair, done up on the head and quite obscuring the forehead and ears in accordance with the then prevailing style; and completely enveloping the hair and face is a net.

Again having recourse to our impressions, we conclude that this example of the alleged infringement does not have the appearance of the patent design, and would not in reasonable likelihood be mistaken for it, and that therefore it does not infringe. This conclusion is the more reluctantly reached because not in accord with the view of the Circuit Court of Appeals of the Second Circuit on practically the same proposition.

The conclusion of the noninfringement of Exhibit D has no application to such other designs as appellee may have made or which it contemplated making, wherein are found the cap, bathing suit, spit curls, and eyelashes applied to a baby doll of the form of the sitting Kewpie, and substantially of the appearance of the patent design. As to such we hold there is infringement. If it is not definitely shown that appellees have actually manufactured such, sufficient appears from the answer to indicate an intention to produce some of these designs as last above indicated; and as to all such we hold appellants are entitled to appropriate relief, to accord which the decree of the District Court is reversed and the cause remanded for further proceedings not inconsistent with the foregoing views.