### In re DAVIDSON.

(Court of Appeals of District of Columbia. Submitted January 14, 1926. Decided May 3, 1926.)

No. 1809.

1. Patents ⊂⊃17.

Substitution of electrical for mechanical power is not of itself patentable invention.

2. Patents ⊂⊃32.

Doubt as to patentability should be resolved in favor of applicant.

3. Patents ⊂⊃36.

Success of applicant's device, where large number of other devices have failed, and evidence of disinterested engineers, should be given weight in determining patentability and invention.

4. Patents ⊂⊃17.

Electrical attachment for shifting mechanism of looms from terry weave to plain weave, or the reverse, *held* a patentable invention.

Appeal from the Commissioner of Patents.

In the matter of the application of John L. Davidson for a patent. From a decision of the Commissioner of Patents denying application, except as to single claim, applicant appeals. Decision modified and reversed as to certain claims, and affirmed as to others.

H. C. Robb, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. The invention claimed by the applicant is an electrical attachment for shifting the mechanism of looms employed in weaving Turkish towels, or like articles, in order to change from pile to plain weave, or the reverse, and thereby produce transverse sections of plain weave alternating with the terry weave.

The appellant states that Turkish towels are now woven, almost without exception, by means of a mechanism which includes a so-called terry motion, the coupling and uncoupling of which produces a change from a pile weave to a plain weave, and vice versa, and that in conjunction with this mechanism there is always used a pattern head and pattern chains of complicated construction and operation. The pattern head is generally attached to one side of the loom frame, while the chains are made of large links, having crossbars, with cams or rollers, moving concurrently with the woven fabric, and mechanically producing the coupling and uncoupling of the terry motion at predetermined intervals.

The application contained 41 counts, of which 25 were withdrawn, one allowed, and the others rejected by concurring opinions of the tribunals of the Patent Office. The following counts were not withdrawn, but were rejected, except No. 35, which was allowed:

"11. In loom apparatus, the combination, with mechanism for producing varieties of weaves to form patterns, of electrically operative means to effect change from one weave to another in a desired order, said means including a continuously traveling member, movable synchronously with the travel of the fabric, and having its surface formed of conductive and nonconductive material."

"23. In loom apparatus having mechanism for producing variation in the weaving to form patterns, the combination with a take-up roll and pawl therefor, of a traveling pattern control co-operative with the take-

up roll to move synchronously with the fabric, and having means of effecting changes in the weaving and separate means for release of the take-up roll to permit the fabric to let back."

"25. A terry loom, having a continuously running cam, a cam lever acted upon by said cam, and a coupling member on said cam lever, normally in coupling position, in combination with electric pattern control means for moving the coupling member to instantaneously uncouple the cam lever, when plain weaving is to be done.

"26. A terry loom, having a continuously running cam, a cam lever acted upon by said cam, and a coupling member on said cam lever, normally in coupling position, in combination with an electric pattern control, embodying a series of contact members arranged in position to close an electric circuit during the movement thereof at predetermined times, and means in said circuit operatively connected with the coupling member to instantaneously uncouple the same under the control of said circuit closing means, when plain weaving is to be done.

"27. An electric control device for looms, comprising a carrier member adapted to be driven by the loom mechanism, and having its surface divided into electroconductive sections and nonconductive sections, arranged in the order of the different weaves of the pattern to be produced."

"34. An electric control device for looms, comprising an endless carrier adapted to be positively driven by the loom mechanism, and having upon its surface a series of sections of conductive material arranged in spaced relation to accord with a particular type of weave to be produced in the fabric, the length dimensions of said sections corresponding with the length dimensions of the said particular type of weave of the fabric.

"35. An electric pattern control device for looms, comprising an endless carrier adapted to be driven in synchronism with the movement of the fabric, and having upon its surface a series of metallic contacts detachably connected thereto in spaced relation, to accord with the arrangement and sequence of certain sections of weave to be produced in the woven fabric."

"38. In a terry loom, the combination with the terry motion and a coupling member therefor, a terry beam and braking means therefor, of a pattern control device, including an electrical circuit closer adapted to travel in synchronism with the fabric, and an actuating magnet operatively connected with the coupling member and the braking means

for the terry warp beam, said magnet being actuated incident to closing of the circuit therefor whereby to produce plain weave and simultaneously operative to effect braking operation during such plain weave."

The following are the references: Reynolds, January 6, 1880; Szczepánik, May 5, 1903; Regal, February 7, 1911; Griffith, February 13, 1906; Crooks, April 8, 1902; Turney, August 18, 1914; Hall (British), March 10, 1904.

The principal reference upon which the rejection was based is the patent of Griffith, February 13, 1906, for a terry loom with an automatic locking device for suspending the terry motion at intervals, thereby shifting the weave from terry pile to plain fabric, and reverse. The Griffith patent shows a lever which controls the action of the loom in this particular; when the lever is held by a pawl, the terry motion is put in operation, and the loom weaves terry fabric. This shifting is accomplished by mechanical means actuated by pins set at desired points in a pattern chain driven by the sand roll. The pins thus carried by the chain in its measured travel upon the sand roll govern the control lever through other levers and rods, and cause it to shift the loom mechanism from plain to terry weave, and vice versa.

The invention claimed in the present application is designed to shift a similar control lever upon a loom for the purpose of alternating the weave as aforesaid; the operation, however, being performed in this instance by electrical, instead of mechanical, means. In order to accomplish this result, use is made of a belt mounted with properly spaced metal contact plates driven by the sand roll, instead of using chain and pins, as in the Griffith patent. By means of electrical conductors operating with the metal contact plates of this invention, and of electromagnets in the electric circuit, the control lever is shifted in position, with the result of changing the operation of the loom from one weave to another.

The applicant points out the advantage of this construction over the Griffith patent in point of cleanliness, exactness, instantaneous operation of the shifting device, economy, because of reduced waste of material and labor requirements, and other important considerations. The record contains the affidavit of an expert loom salesman, having 25 years' experience with various makes of looms, and thoroughly familiar with the mechanical construction and operation of nearly all looms of this character manufactured in the United States, and thoroughly familiar with the in-

vention herein involved, who states that no section of looms such as described in Griffith's invention is now running, or has ever been run for any length of time, except in conjunction with a chain head, pattern chain, Jacquard head, or something similar to change the weave; that he has seen a number of looms in daily operation with the Davidson improvement, without chain head or pattern chain, and that it is superior to any kindred device of which he has any knowledge.

[1] The tribunals of the Patent Office rejected all of the claims, except No. 35 as aforesaid, upon the ground that the Griffith device, if properly constructed, would accomplish the same results as that of the applicant, and that there was no inventive conception involved in the general combination and mode of operation of applicant's device; "the only field of improvement consisting in the specific means employed for rendering the device more speedy in its action." This was said to follow from the substitution of electrical for mechanical power, which of itself did not constitute invention. It was also held that many of the claims were too broad in terms to be allowable, and that others were defective because they "cover merely the obviously desired end" to be accomplished.

We are of the opinion that the appellant's device discloses patentable invention. It is true that the end to be accomplished by the device was not novel, but the combination of means to that end, considered as an entirety, were novel for this purpose, and attained to invention.

[2, 3] Moreover, where the question of patentability is close, the doubt should be resolved in favor of the applicant. In re Eastwood, 33 App. D. C. 292; In re Harbeck, 39 App. D. C. 555; In re Handschuck, 46 App. D. C. 155; In re Rowell, 48 App. D. C. 238. And proof that a large number of the devices covered by an application for a patent were in use, and that the applicant had succeeded where others had failed, should be given weight in determining patentability and invention, as should the evidence of disinterested engineers relative to these facts. In re Shollenberger, 51 App. D. C. 332, 279 F. 314.

[4] We agree with the lower tribunals that certain of appellant's claims are too broad to be allowable, but in our opinion those above copied, to wit, 11, 23, 25, 26, 27, 34, and 38, as well as 35, should have been allowed. The decision of the Commissioner of Patents is therefore modified, being reversed as to the claims just enumerated.

The cause is accordingly remanded, with directions to allow said claims 11, 23, 25, 26, 27, 34, and 38, as well as 35; the decision as to the other claims being affirmed.