**FOX v. SPIEGEL et al.**

No. 1999.

District Court, D. Connecticut.

May 19, 1931.

George H. Gilman, of Norwich, Conn., for plaintiff.

Sachs, Sachs & Sachs, of New Haven, Conn. (Edward H. Cumpston, of Rochester, N. Y., of counsel), for defendants.

HINCKS, District Judge.

This is a suit charging the defendants with the infringement of design letters patent No. 73,226, granted to the plaintiff on August 9, 1927, on an application filed May 19, 1927, for the design of a bottle.

The plaintiff, it seems, conducted a small bottling business at Norwich in this state, and in the spring of 1927 ordered a quantity of bottles, as per drawing submitted with the order, from the F. E. Reed Glass Company of Rochester, N. Y. Thereafter, the plaintiff, on his own application, procured the patent in suit upon the design of the very bottle thus purchased. He brings this suit against Spiegel, likewise engaged in the bottling business in New Haven, who had purchased and used bottles of the same design from the Reed Company. These facts are conceded. It is also conceded that the defendant's use of the bottles in question was an infringement if indeed the plaintiff's patent is valid.

The main issues were whether the plaintiff was in fact the inventor of the design issued on his sole application; whether Cohen, the agent and salesman of the Reed Glass Company, had earlier conceived the design disclosed, and reduced it to practice and manufacture so as to preclude its patentability on the plaintiff's application; and whether the design, if indeed originated by the plaintiff, involves a true invention in view of the prior art. The evidence on these three issues was conflicting.

The plaintiff claimed that the Reed Company salesman, Cohen, called to make a sale and showed him numerous designs which were not satisfactory, but he (the plaintiff) had in mind a design for a bottle which Cohen undertook to draw on paper. He testified that after several attempts, all on this visit, Cohen succeeded in producing a drawing which embodied the plaintiff's ideas; that he took this drawing with him when he left, perfected it, sent the perfected drawing to the plaintiff by mail, and a week later called and took his order for a quantity of bottles as per this drawing. He was corroborated, in part at least, by his wife and a relative.

Cohen, on the other hand, told a wholly different story. Cohen was a bottle designer as well as a salesman, and he testified that the design in question he had perfected at an earlier date, and that when he first called on the plaintiff to solicit his business, he submitted numerous designs including that in question. The design in question was selected by the plaintiff from this number and the order resulted.

There is no need for me to resolve this conflict in testimony. If Cohen's version of the affair is accepted, it of course results that the plaintiff was not the inventor of the design. And the same conclusion necessarily results from analysis of the plaintiff's own testimony.

Thus the plaintiff admits that he did not and could not make a drawing of his own design. Lacking the ability to draw, it results that the only vehicle available for the expression of his idea was the spoken word. Whether it was indeed the plaintiff's mind which conceived the design in question can be judged, in the absence of a drawing by the plaintiff, only by the words which, he claims, communicated his idea to Cohen. To be sure, he testified that the completed design was his. But, obviously, this was no more than his conclusion as to one of the main issues of the case.

And so, taking at face value his own testimony and that of his witnesses, it becomes apparent that the sum of his expression fails to indicate any patentable invention. On the contrary, it discloses that his only participation in the evolution of the design was such that at most he was a joint designer with Cohen.

The design involved the various parts of the whole bottle which, for discussion, can conveniently be grouped into the three regions of (1) neck, (2) middle body, and (3) lower body. As to the lower body, the only expression which the plaintiff gave of his idea was: "I told him to draw it with lines, panels down from the center, down to the bottom, to draw down with panels and he did." With regard to the neck of the bottle, plaintiff testified that he wanted the neck ornamented with three rings like the bottles used by the Nugrape Company. Cohen told him that that design had been patented, and he said: "If three rings are patented by Nugrape Company, we will have two rings, two small rings on top." As to the middle body, on direct examination the plaintiff said nothing about instructions for a bend or bulge in the middle of the bottle, but on cross-examination he said: "I told him to put the heavy bend in the middle." The foregoing extracts are as definite as anything that appeared in the evidence as to the plaintiff's instructions relative to the curved middle and paneled bottom of the bottle, which were its only possible three claims for distinction.

The complete absence of expression by the plaintiff of the idea for which he claims invention, other than vague suggestions such as just recited, necessarily indicates that it was not the plaintiff's mind which supplied the necessary correlation of shape, dimension, and ornamentation, through which alone the elusive notions of style can be reduced to finite form in a design.

Possibly he is sincere in believing himself the creator. It has been said that the true test of a great lyric is that it inspires every reader with the feeling that he could have written it. So perhaps it is with a design. It is human nature to feel at the sight of a design which satisfies that it is just what we had in mind. Surely one who suggests to a musician that he write music having, say, quick time at the beginning, low tones at the end, and loud chords in the middle, could not claim authorship of the resulting song. Yet compliance with such a suggestion might obviously have an effect of real beauty—or just the reverse. The point is that any aesthetic result from such vague suggestions comes more from the skill of the collaborator than from him who utters the initial suggestion. The latter, as I have suggested above, may indeed be sincere in his pride of creation, but as the old adage goes, it is a wise father that knows his own child.

And even if the plaintiff contributed some creative element to the design, on the plaintiff's own testimony it appears that Cohen's part in the finished product was such as to make him at least a joint designer, thus invalidating the sole patent to the plaintiff. Ross & Co. v. Wigder (C. C. A.) 290 F. 788.

Entirely apart from any question of origin, it is impossible to find any inherent invention in the design in question. The prior art certainly is suggestive. Thus the Goldberg design (48,371), the Levin design (51,927), the numerous Root designs (63,324, 63,326, 68,991), all show lower body at least partly paneled. The said Levin design, the Ginter design (67,025), the Reed design (68,-594), Root designs (68,991 and 54,682), all show the bulging middle body. As to the neck, plaintiff's own testimony discloses the choice of two rings instead of three because of his belief that the Nugrape design, which had three rings, was patented, and the suggestion of dots between the rings was Cohen's idea and not the plaintiff's. These same features appear singly and in different combinations in numerous bottles in evidence as exhibits antedating the plaintiff's application.

Now it is undoubtedly true that in certain cases a new combination of old elements may be patentable. Smith v. Whitman Saddle Co., 148 U. S. 678, 13 S. Ct. 768, 37 L. Ed. 606; Steffens v. Steiner (C. C. A.) 232 F. 862, 864; Knapp v. Will & Baumer Co. (C. C. A.) 273 F. 380. But in all such cases the assembly or the correlation of the old elements must in itself amount to invention. As in every case, invention must be present.

Invention in this technical sense seems not

to have a single satisfactory definition. In the Steffens Case, supra, dealing with the patentability of a combination of old elements, it was said that the presence of invention depended "upon the novelty of the unitary and resultant design and the *circumstances of the case*." Slight variations of the shape and disposition of the old elements, and mere mechanical skill, do not rise "to the level of invention." In the case of Gorham Co. v. White, 14 Wall. 511, 526, 20 L. Ed. 731, it was said that the "true test of identity of design" was "sameness of effect upon the eye" of the ordinary, or lay, observer; or whether the resemblance was such as to deceive a purchaser. And so, in the Gorham Case, it was held that the second design was an infringement and its patent invalid. That is not to say, however, that in every case in which such identity of design is absent, invention necessarily is present in the second design. For even if the second design was without anticipation in the art, it might still wholly lack invention, if, in the words of the court in the case of Strause Gas Iron Co. v. William M. Crane Co. (C. C. A.) 235 F. 126, 131, "the new combination [is] within the range of the ordinary routine designer."

In this case it seems to me obvious that the design in suit to which, at most, the plaintiff's only contribution was a rearrangement of old elements with minor variations, was well within the range of the ordinary designer. The witness Cohen was just such a designer and two books of his designs are in evidence. None of these designs is claimed as an anticipation. But taken by the large, they confirm my conclusion that the design in suit is by no means beyond the ordinary range.

Accordingly, the defendant is entitled to decree dismissing the bill of complaint, with costs.