BATTERY PATENTS CORPORATION
v. COE, Commissioner of Patents.

No. 6871.

United States Court of Appeals for the District of Columbia.

Decided Sept. 13, 1937.

MARTIN, Chief Justice, dissenting.

———◆———

Nelson J. Jewett, of Washington, D. C., and Russell Wiles, of Chicago, Ill., for appellant.

R. F. Whitehead, Solicitor, United States Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

The appellant, hereinafter referred to as the plaintiff, is assignee of the application of one George S. Lewis seeking a design patent for a combined bicycle guard and lamp. The application was rejected by the Examiner, and on appeal the Board of Appeals sustained the Examiner's rejection. The plaintiff then filed a bill in equity in the United States District Court for the District of Columbia, under Section 4915 of the Revised Statutes, as amended (35 U.S. C. § 63 [35 U.S.C.A. § 63]), alleging the filing and due prosecution of the application and seeking a decree that the plaintiff is entitled to receive letters patent for the invention of Lewis, and that appellee, United States Commissioner of Patents, hereinafter referred to as the defendant, be authorized and directed to issue such patent. The defendant answered, admitting the filing and due prosecution of the application, and the rejection thereof, but asserting that the design was unpatentable, in the light of certain known designs mentioned below.

The defendant cited the following prior art: Humble, 1,069,550, Aug. 5, 1913; Sawyer, Design, 92,114, Apr. 24, 1934; Advertising Booklet of the Series 50 Buick Straight Eight for 1932, Page 13, Model 32-56-S, Fender & Headlights.

At the trial below the patent application, the Examiner's statement, the decision of the Board of Appeals, and the prior art cited were in the usual course made a part of the record. Mr. Lewis testified in behalf of the plaintiff as to prior bicycle design, his design, and the widespread adoption thereof by bicycle manufacturers. No testimony was introduced for the defendant. At the close of the hearing, the trial court made the following findings and conclusions:

*"Findings of Fact*

"1. This is a suit brought under the provisions of Section 4915 R.S. (U.S.C., Title 35, Sec. 63 [35 U.S.C.A. § 63]) to authorize the Commissioner of Patents to issue a design patent to plaintiff on the application of George S. Lewis, plaintiff's assignor.

"2. The application of Lewis discloses a design for a Combined Bicycle Guard and Lamp in which the guard for the front wheel of the bicycle is extended over the wheel and beyond the fork of the bicycle, a tear-drop shaped lamp being affixed to the guard between the fork and the end of the guard.

"3. The patent to Humble, No. 1,069,-550, discloses a bicycle having a guard for the rear wheel which extends over the upper portion of the wheel.

"4. The design patent to Sawyer, No. 92,114, shows a design for a velocipede having a guard for the front wheel which is extended over the wheel and a substantial distance beyond the steering fork, a lamp being affixed to the guard between the fork and the end of the guard.

"5. The Advertising Booklet of the Series 50 Buick Straight Eight for 1932, discloses on page 13 an automobile having a tear-drop shaped fender light.

"6. In the early days of bicycle manufacture, it was the practice to have the

front guard of the bicycle terminate even with the steering fork.

"7. Later, the top of the front guard was advanced, in some cases, to a point in line with the truss rods.

"8. At the time of the Lewis design involved herein, the front guard of bicycles had not been advanced beyond the truss rods, and it was the common practice of bicycle manufacturers to have the front guard terminate even with the steering fork, or even with the truss rods.

"9. In the Lewis design, the guard was advanced a very substantial distance beyond the fork and beyond any usual location of the truss rods.

"10. In the Lewis design, the lamp was placed between the portion of the guard even with the truss rods and the forward end of the guard, which extended a substantial distance ahead of the truss rods.

"11. Plaintiff has sold two types of bicycles, one model, called the 'Standard', being cheaper and not being provided with the Lewis design. In this model, the guard terminates even with the truss rods. In the second type, called the 'De Luxe' model, the bicycle, which is otherwise the same as the 'Standard', is provided with the elongated fender and lamp of the Lewis design. The bicycles have been sold in large numbers. Contrary to the usual experience, the more expensive model, equipped with the Lewis design, has outsold the cheaper model. Up to the present time, the higher priced bicycle has outsold the cheaper one in the proportion of 14 to 10.

"12. Within a very short time after the new design appeared, it was copied by most of plaintiff's competitors.

"13. One competitor employs a guard and a tear-drop lamp-shaped device on the guard, the lamp being a dummy.

### "Conclusions of Law

"1. In order that a design be patentable its creation must have involved the exercise of invention.

"2. The design of the Lewis application does not disclose invention over the prior art as exhibited in the patents and publication in evidence.

"3. The plaintiff is not entitled to the issuance of a patent on the application of its assignor, George S. Lewis.

"4. The bill should be dismissed."

A decree was thereupon entered dismissing the bill of complaint, and this appeal was taken.

We have carefully examined the record and find that there is substantial evidence to support each of the findings of fact. The question in the case is whether the conclusion of law that the design of the Lewis application does not disclose invention is valid.

The Lewis design is illustrated by the following drawings:

The Humble patent shows a bicycle rear mudguard which has the same general configuration as the guard employed by the plaintiff in his design:

ment in view of Humble. The conclusion was that there was no invention in mounting a lamp of substantially the Buick form upon a guard the shape of which was old.

The Sawyer design shows a velocipede equipped with a front mudguard and lamp:

It may be admitted at the outset that small lamps of streamlined outline were

The Buick Advertising Booklet reveals an automobile which has a front fender with a parking light mounted thereon as shown in the following cut:

known before the instant application, and that bicycle mudguards semicircular in shape were common.

The parking light is the small lamp set on the fender in line with the rear of the headlight.

The tribunals of the Patent Office considered that the general configuration of the Lewis lamp and the form of mounting were shown by the Buick citation, and that nothing inventive resided in the guard ele-

In order for one to be entitled to a design patent the design which he has created must be the result of inventive skill. The Supreme Court, in Smith v. Whitman Saddle Co., 148 U.S. 674, 679, 13 S.Ct. 768, 770, 37 L.Ed. 606 (1893), quoted from Northrup v. Adams, Fed.Cas. No. 10,328, 12 O.G. 430, as follows:

" 'To. entitle a party to the benefit of the act, in either case [mechanical patent or design], there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new role, is not invention.' "

The Court continued:

"The shape produced must be the result of industry, effort, genius or expense, and new and original as applied to articles of manufacture. Foster v. Crossin, 44 Fed.Rep. 62. The exercise of the inventive or originative faculty is required, and a person cannot be permitted to. select an existing form and simply put it to a new use any more than he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty and the result is in effect a new creation, the design may be patentable." [148 U.S. 674, at page 679, 13 S.Ct. 768, 770, 37 L.Ed. 606]

See, also: In re Sherman, 35 App.D.C. 100 (1910); Finley v. Coe, 64 App.D.C. 276, 77 F.(2d) 399 (1935).

■ Combining old forms so as to produce a new and ornamental design is not patentable when in the particular case the combining of the elements did not require invention. In Knapp v. Will & Baumer Co., 273 F. 380, 384, 385 (C.C.A.2d, 1921), the court said:

"What Knapp did involved no inventive act. He took an ordinary coach candle, with its bell shaped tip, and simply changed the column from a round one into a square one, leaving the bell-shaped tip the same as before. In converting a round column into a square one, he followed precisely the teachings of the art as previously set forth by Lamborn. He did what any ordinary workmen would have done—drew a round candle through a square mold in accordance with a common practice. Then he provided it with a self-fitting base in accordance with the teachings of the art since 1861.

"It is true that invention may reside in a new combination of old elements. Every new combination of old elements, however, is not patentable."

And in Imperial Glass Co. v. A. H. Heisey & Co., 294 F. 267, 269 (C.C.A. 6th, 1923), the court said:

"While we do not question that patentable designs may arise from regrouping familiar forms and decorations, yet when all that was done was to take an existing piece of table glassware having these flutes, and substitute a slightly different form of flute already in common use on other articles of domestic table glassware, we are satisfied that there can be no patent monopoly. [Authorities cited] "

In Steffens v. Steiner, 232 F. 862 (C.C.A. 2d, 1916), the complainants had brought ten suits for infringement of ten design patents for cigar bands. The elements of the designs of the bands were all old although the particular patent designs were new. The District Judge had sustained the validity of three of the design patents, apparently feeling that he was bound by prior decisions in the Circuit. He had said:

" 'The most important issue in these cases is the validity of the patents themselves, because the limitation is so deliberate, unblushing and minute as to require no consideration at all. Were the matter open to me de novo, I should hardly think that these groupings of elements, so long familiar in the art, into such new combinations as are here presented, was beyond the competence of an ordinary designer, who for these purposes should be regarded as the test of invention. It is true that no such combinations are exactly presented before in the art, and indeed their literal novelty is unquestioned; but I cannot bring myself to think that the especial combinations were variations beyond what scores of designers could produce at will out of the materials at hand.' " [232 F. 862, at page 863]

The Circuit Court of Appeals reversed, indicating that its prior decisions had been misconstrued by the lower court. The court said:

"Invention may or may not reside in combining a multitude of old design elements into one unitary design. Whether or not invention is involved in any particular case of that kind must depend upon the novelty of the unitary and resultant design and the circumstances of the case.

"The question in the case at bar is not whether a design patent can be sustained,

although each separate element in the design may be old, but it is whether what has been done in assembling the old elements in the new designs rose in these particular cases to the level of invention. What has been done in the patents in suit has been to vary slightly the shape and disposition of the otherwise old design elements or surface ornamentation of the cigar bands. The test of invention by which the court below decided the case was stated as follows:

" 'This test will not allow validity to a patent for immaterial changes which do not differentiate from the prior art enough to be distinguishable, but will allow any new combination of old elements, even though it took no invention beyond that of a skilled designer.'

"In laying down the above test the court below has been led into error. To sustain a design patent the design must involve something more than mere mechanical skill. There must be invention." [232 F. 862, at pages 864, 865]

On the other hand, although all the component parts of a design may be old in the art, combining them into a new and ornamental design may have required inventive genius. Indeed many, if not most, of the elements of design are long known and familiar. As was said by Augustus Hand, then District Judge, in Friedley-Voshardt Co. v. Reliance Metal Spinning Co., 238 F. 800, 801 (D.C.S.D.N.Y.1916):
"There is no doubt that a design patent, like every other, requires invention, and, if the design in question for a gas and electric fixture known as a shower pan is a mere aggregation of well-known elements which could be assembled without ingenuity or artistic skill, it cannot be regarded as one showing invention. It is to be remembered that ornaments resulting from the varied juxtaposition of curves and angles, like the musical combinations resulting from the sequence of notes and chords, all contain certain intervals—ornaments intervals of space, music intervals of sound—which are traditional and well known. It is difficult, if not impossible, after years of development, to imagine any article of ornament or any production of music of which this is not true. It is in the arrangement, or, to use the technical term of the patent law, the combination, of elements, and probably at this late day in that alone, that originality and aesthetic

skill may be evidenced. Mr. Ainsworth, the designer of Caldwell & Co., well expressed this idea when he said in his testimony at the trial:
" ' * * * All motives are old. We have inherited them, and we combine them in such a way as to produce an artistic result and a new result; combining them in such a way as to make proper intervals in the spacing of ornaments and the proper emphasis of different ornaments, and to keep the play of light and shade so as to make on the whole a pleasing design, and its merit would depend a great deal on how thoughtful and how different it was from the stereotyped combinations.' "
This court, in Application of Grigsby, 55 App.D.C. 294, 5 F.(2d) 117 (1925), held that a design patent should be issued for a triple-curved glare visor for automobiles although the prior art showed visors with plain arcuate curves and others with ogee curves. The patentability of an inventive combination of old elements is well expressed in Graff, Washbourne & Dunn v. Webster, 195 F. 522, 523 (C.C.A. 2d, 1912), where the court said:
"It will simplify the discussion if it be at once admitted that each element of the patented designs, considered separately, was old and that sometimes two or more of them appear combined in the prior art. This does not invalidate the patents, unless it appears that they were so assembled as to form the designs of the patents. Indeed, it is manifest that a skillful designer, with the Graff dish before him, could construct a new and ornate design containing every element of that dish and at the same time presenting a totally different impression to the eye of the ordinary beholder. It is the design as a whole and not the segregated scrolls, leaves, flowers and forms which are united to produce the general effect, which must be considered. The situation in this respect is analogous to machines made up of a combination of old elements.

"The machine produces a new result, the design a new impression upon the eye. To refuse patentability to a design because the separate elements are old, would be tantamount to denying originality to 'The Lion of Lucerne' because other sculptors before Thorwaldsen had carved lions from stone. It would relegate 'The Angelus' to obscurity because other artists before Millet had painted peasants at work in the harvest field."

See also Pfeffer v. Western Doll Mfg. Co., 283 F. 966 (C.C.A. 7th, 1922); Protex Signal Co. v. Feniger, 11 F.(2d) 43 (C.C.A. 6th, 1926).

It has been settled since the case of Gorham Mfg. Company v. White, 14 Wall. 511, 20 L.Ed. 731 (U.S.1871), that the general effect of a design is controlling, rather than minor differences which alter the design without changing its appearance in the eyes of the ordinary observer. Also this court, in the case of In re Schraubstadter, 26 App.D.C. 331 (1905), indicated that in determining the question of the patentability of a later design it is not necessary to find that it infringes an earlier one in order to reach the conclusion that the later design lacks patentability. That is to say, a later design may in its general effect be so different from an earlier one as not to infringe it, and still the earlier may so anticipate the later in idea as to preclude invention.

We are thus confronted with the question whether, conceding the elements of the Lewis design to be old, but its precise combination to be new, the design required inventive genius.

We are of opinion that nothing in the prior art anticipates the Lewis design in totality of ornamental effect. The Humble rear mudguard while curved concentric to the wheel, unlike the Lewis mudguard has no lamp combined with it. The Sawyer lamp is not streamlined and is differently mounted upon a guard of very different appearance. The total effect of the Sawyer combination is doubtfully ornamental at all, at least from the standpoint of present-day vehicle designs. Bicycles made prior to the Lewis design disclose, as shown by the record, a very short front guard, extending little, if any, beyond a point directly above the axle of the front wheel, and a non-streamlined lamp placed close to the upright supporting the handlebars. The Lewis design, it is true, combines a front lamp on a front guard concentrically curved. But it adds a further forward extension of the guard and it mounts and angles and streamlines the lamp upon and in relation to the guard in a manner which we think produces an ornamental effect wholly new and very pleasing.

Nothing in the record is at all like the Lewis design in general appearance except the lamp and fender combination shown in the Buick Advertising Booklet, and while this has an ornamental aspect, again we think it is materially different from the Lewis design. The Buick parking lamp, although streamlined in form, is tiny in proportion to the fender upon which it is mounted, in comparison with the Lewis lamp, and the Lewis fender; and in addition is mounted differently, that is, horizontally, whereas the Lewis lamp is tilted forward slightly off the horizontal. The Buick fender is a flat arc, almost tangential to the wheel; the Lewis guard is semicircular and concentric. Even if these differences between the Buick and Lewis designs may be said to be in and of themselves small, still the effect, in the Lewis design, is a material change of general appearance—which may amount to invention. Application of Grigsby, supra. Although the Buick lamp blends into the form of the forepart of the automobile and fender, it produces no especial effect of its own. The Lewis lamp as mounted produces the impression of speed and forward motion. In the plaintiff's brief before the Board of Appeals this effect is likened to the impression given by a flag in the bow of a boat, or by an automobile radiator ornament in the shape of an eagle with spread wings. The analogies are apt.

We think it required more than the skill of the ordinary designer to take the disassociated elements of the prior art and combine them in a design so new and so pleasing. The conclusion we reach is confirmed by the prompt and widespread adoption of the Lewis design. The record reveals that the competitors of the plaintiff were quick to perceive the merits of the combined lamp and guard of Lewis, and that bicycles equipped with it outsold less expensive machines made without such equipment. The record shows that by 1936 the use of the Lewis design was so widespread that a bicycle appliance manufacturer pictured in his advertising, as a typical modern bicycle, one having such a front guard and light. Prompt and widespread adoption is recognized by the courts as evidence of invention. See Standard Match Corporation v. Bell Mach. Co., 83 F.(2d) 365, 367 (C.C.A. 7th, 1936):

"Whether a design which is novel and ornamental is entitled to coverage by a design patent depends to a large degree upon the reception which those for whom it is made, accord it."

We are aware that this court has said that in case of a serious doubt in the mind of the court after a careful review

of the evidence, the doubt should be resolved in favor of the one seeking a patent. Application of Drew, 55 App.D.C. 291, 4 F.(2d) 958 (1925); In re Glafcke, 51 App. D.C. 204, 277 F. 603 (1922); In re Davidson, 56 App.D.C. 279, 12 F.(2d) 814 (1926). It has also said that where there are, as here, concurring decisions of the patent tribunals, the court should be convinced beyond a reasonable doubt before reversing them that if a patent had been granted the court would upon the same record sustain it under attack. We are not doubtful under either of these rules that the application in the instant case should have been granted.

The decree of the District Court is Reversed.

VAN ORSDEL, Associate Justice, sat during the argument of this case, but died before the opinion was prepared.

MARTIN, Chief Justice (dissenting).

The applicant, George S. Lewis, filed in the Patent Office an application for a patent for a design for a bicycle guard and lamp. He afterwards assigned his right and interest in the application to the present appellant, Battery Patents Corporation. An illustration of the design in question appears in the majority opinion of the court.

The application was considered and denied by the Primary Examiner in the Patent Office upon the following references: Humble, 1,069,550, August 5, 1913; Sawyer (Design), 92,114, April 24, 1934; Advertising Booklet of the Series 50 Buick Straight Eight for 1932, page 13, Model 32—56—S, fender and head lights.

The Examiner pointed out that the same configuration of a lamp on a fender is shown to be old in the catalogue citation picturing the Buick automobile. He also called attention to the Humble patent, showing the transverse or cross-sectional configuration of the guard embodied in the applicant's design. He further cited the design patent to Sawyer, disclosing a lamp upon the front wheel of a tricycle in a relation generally similar to that of applicant's. An appeal was taken from the Examiner's final ruling to the Board of Appeals, which held that the difference between the shape of applicant's guard and lamp and that of the Buick fender and lamp is not such as to constitute invention;

that the general configuration of the bicycle guard, particularly with a lamp thereon, is shown to be old. The Board affirmed the decision of the Examiner.

Whereupon the appellant, as assignee of the applicant, filed suit in the District Court of the United States for the District of Columbia, under section 4915, Rev.St., as amended (section 63, Tit. 35, U.S.C. [35 U.S.C.A. § 63]), making the Commissioner of Patents party defendant and praying that the Commissioner be directed to issue a patent to plaintiff upon the application.

The case was tried before the lower court, which entered findings of fact and conclusions of law in the record, holding that the design of the Lewis application does not disclose invention over the prior art as exhibited in the patents and publication in evidence; that the appellant is not entitled to the issuance of a patent on the application of its assignor, Lewis. The court thereupon dismissed appellant's bill, with costs, and from that decree this appeal is taken.

It thus appears that the Lewis application was denied by the unanimous rulings of the Patent Office tribunals, and that their holding was sustained by that of the lower court. It is clear, therefore, that the decision of the lower court should not be reversed unless it appears that it is clearly and obviously erroneous.

I am of the opinion that the decree of the lower court should be affirmed.

A reference to the Sawyer patent, supra, shows a velocipede in which the mudguard is extended beyond what corresponds to the fork of the bicycle, that is, the portion of the frame to which the handle bar is fastened, and has a lamp placed on the guard in a position almost exactly the same as that shown in appellant's design. A velocipede is a vehicle of the same general character as a bicycle, and obviously there would be no invention in transferring any given design of guard and lamp from a velocipede to a bicycle. It must be remembered that the question here is not one of structure for functional purposes, but a question of design and appearance.

The picture of the Buick automobile appearing in the majority opinion is a reproduction of a cut in a Buick catalogue, showing ,at the left hand side thereof, an automobile parking lamp of substantially the same shape as the lamp shown in the application of Lewis. There can be no

invention in selecting from the prior art, where it had been used in a similar situation, a lamp of this shape and placing it on a bicycle mudguard in place of the lamp shown in the Sawyer patent. The Humble patent discloses a mudguard of substantially semicircular shape, similar to that shown in the Lewis application with a lamp thereon.

It seems clear that the Lewis design is the result of mere mechanical combination, and does not involve the exercise of invention. The elements comprising it are all old and were used for purposes similar to applicant's construction, serving no other purpose and presenting a substantially similar appearance.

The statute (section 73, tit. 35, U.S.C. [35 U.S.C.A. § 73]) specifically provides that any person who has invented any new, original and ornamental design for an article of maunfacture may obtain a patent therefor. In order to be patentable, a design must be the product of the inventive faculty, as distinguished from mere mechanical skill. In the case of Smith v. Whitman Saddle Company, 148 U.S. 674, at page 679, 13 S.Ct. 768, 770, 37 L.Ed. 606, the Supreme Court of the United States quoted with approval the language of Mr. Justice Brown in Northup v. Adams, Fed.Cas.No. 10,328, 12 O.G. 430, as follows:

"To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty. * * * Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new role, is not invention."

See, also, Nat Lewis Purses v. Carole Bags, 83 F.(2d) 475, 476 (C.C.A. 2d, 1936); A. O. Smith Corp. v. Petroleum Iron Works Co., 73 F.(2d) 531, 538 (C:C.A. 6th, 1934); Berlinger v. Busch Jewelry Co., 48 F.(2d) 812, 813 (C.C.A. 2d, 1931); In re Walter, 39 F.(2d) 724, 725 (C.C.& P. A., 1930); Strause Gas Iron Co. v. William M. Crane Co., 235 F. 126, 131 (C.C. A. 2d, 1916); Fox v. Spiegel, 50 F.(2d) 195, 196, 197 (D.C.Conn., 1931).

It seems clear that in the design here involved the combination of elements, old in themselves, in a manner essentially similar to their former functions, and not differing substantially from their former appearance, is merely mechanical and does not attain to the dignity of invention.

In my opinion, therefore, the decree of the lower court should be affirmed.