**METALLIZING ENGINEERING CO., Inc. v. GENERAL SCREW MACH. PRODUCTS, Inc.**

Civ. No. 50—119.

United States District Court, D. Massachusetts.

Nov. 2, 1950.

Burgess & Dinklage and Louis Burgess,
all of New York City, Haussermann, Davi-

son & Shattuck, and Stuart Macmillan, all of Boston, Mass., for plaintiff.

Cosimo J. Toscano, Harry Zarrow, Worcester, Mass., Herbert P. Kenway, Robert B. Russell, Kenway, Jenney, Witter & Hildreth, all of Boston, Mass., for defendant.

SWEENEY, Chief Judge.

The plaintiff is the owner of Design Patent No. 157,315 issued on February 14, 1950, and covering a design of a wave-type lawn sprinkler. It brings this action against the defendant seeking an injunction against further infringements and damages for alleged past infringements. The defendant denies infringement, and further asserts the invalidity of the Letters Patent.

### Findings of Fact

Approximately measured, the plaintiff's sprinkler consists of a pair of parallel tubular runners four inches apart, whose horizontal portions, twenty inches in length, rest or slide along the lawn. These runners terminate at one end of the device, which we may conveniently call the front end, by turning upwards in sled-like fashion for one and one-half inches, being sealed at each of the two parallel extremities by round terminal caps, while at the opposite end, the runners take an upward and converging course, merging to form an elliptical loop six inches high. Resting on the runners adjacent to the point where they begin to turn up in front is a flat, horizontal cross-plate, two inches wide on which is mounted a motor housing whose elliptical outline is symmetrical to, but slightly smaller than, the loop formed by the converging runners at the rear end of the device. The motor housing has a front face recessed at the top with a small indentation that gives way one-quarter inch down to a lesser ellipse which billows out to make up the greater part of the housing face. A center rib one-quarter inch wide descends from the top half-way down the front of the housing and runs into a wider triangular adjustment plate with a dial knob on its upper portion and a circular hose coupling projecting from its base. Contained within the center rib is an indentation shaped like a tall, narrow Gothic church window in which is inscribed vertically the plaintiff's trade-name "METCO". Below the hose coupling on the triangular adjustment plate is the quarter-inch-high flange base of the motor housing which rests on the aforementioned cross-plate. From the upper back side of the motor housing emerges a horizontal, curved spray tube, twenty inches long, with its top portion formed by a raised, reinforcing channel rib into which are inserted at equal intervals numerous tiny nozzles. This tube is supported at the rear end of the device by a flat vertical plate suspended from the top of the elliptical loop formed by the converging runners.

As to design patents, the controlling statute, 35 U.S.C.A. § 73, imposes three requisites to their validity:—novelty, ornamentality, and inventiveness. Kanne & Bessant v. Eaglelet Metal Spinning Co., D.C., 54 F.2d 131. It is inventiveness as applied to the appearance of the plaintiff's sprinkler rather than to its mechanical functions which is here relevant, for design patent acts: "contemplate not so much utility as appearance. * * * And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture or article to which it may be applied, or to which it gives form." Gorham Manufacturing Co. v. White, 14 Wall. 511, 524, 20 L.Ed. 731. Hence the question is whether the creation of the design which gives the plaintiff's sprinkler its distinctive appearance required invention. So elusive is the test of inventiveness that it "defies definition and resides as a subjective standard in the mind of the judge considered as an 'average observer.'" Application of Johnson, 175 F.2d 791, 792, 36 C.C.P.A., Patents, 1175. Yet as a minimum standard the courts uniformly demand in the creation of the design an exercise of more than mere mechanical skill, requiring a departure in design from that of other articles of the same general class which exceeds the scope of knowledge and skill of the routine designer. Western Auto Supply Co. v. American-National Co., 6 Cir., 114 F.2d 711. Such a departure from the prior art does not emerge from a compari-

son of the distinctive features of the plaintiff's sprinkler with its older rivals in the field.

Samples of the prior art in wave-type sprinklers reveal the same basic functional components—sled runners, motor-housing, and spray tube with rear end support—placed in the very same juxtaposition to each other as in the plaintiff's sprinkler. But the outlines of these older components are sharper and more angular than the undulant curves stressed in the plaintiff's device, with the result that prior art sprinklers have a more upright, square-cut appearance. Yet the significant features of the plaintiff's design are suggested in embryonic form in the older devices. The Skinner, for example, has a slightly larger motor housing whose upper portion is semi-circular rather than technically semi-elliptical. In the Skinner, the housing face consists of one small flat surface projecting minutely and sharply out from the remaining flat surface instead of a rounded secondary ellipse billowing out roundly from a small indentation at the top of the face, as in the plaintiff's sprinkler. Although these differences may be discernible, even to the non-expert, the slight modification of curves and lines necessary to bring these features of Skinner into general conformity with the plaintiff's design hardly call for that extraordinary skill amounting to invention. Similarly with the characteristic of converging runners, the Skinner's merely converge at a lower point and sharper angle than do the plaintiff's. Likewise, the triangular adjustment plate and dial knob on the face of the plaintiff's motor housing appear more primitively on the front of the Skinner's motor housing, there being a screw instead of a dial knob. Again, it needs but the work of a routine designer to bring the Skinner into conformity with the plaintiff's design. The Watermore sprinkler, instead of horizontal runners for supporting and dragging the mechanism along the lawn, employs round-shaped rods which curve upward in the middle as well as at the ends, yet, there in the same functional element is the suggestion of round or tubular-shaped runners, aside from the fact that it is doubtful whether even the un-

anticipated adoption of such a conventional form as the round or tubular shape can amount to invention. Knapp v. Will & Baumer Co., 2 Cir., 273 F. 380. Two other important features of the plaintiff's design: symmetry of outline between motor housing and rear support, and turned-up runners at the front end, are clearly present in the prior art, the former in the defendant's old "Avon 1500" model, and the latter in all the devices exhibited.

It is possible for various design characteristics old in the art to be combined so ingeniously as to rise to the dignity of invention, Battery Patents Corp. v. Coe, 68 App.D.C. 61, 93 F.2d 220, but such originality is lacking here in the plaintiff's design where the prior art discloses similar features in similar combination (Skinner's combination of semi-circular motor-housing with recessed frontal face and converging runners) and also the same juxtaposition of the basic parts—motor housing, spray tube, runners, and supports. In re Faustmann, 155 F.2d 388, 33 C.C.P.A., Patents, 1065.

There remain two features of the plaintiff's design which indicate a wider departure from the prior art than do those heretofore discussed. First, the spray tube of the plaintiff's sprinkler is unique in that the water-spraying nozzles are set into the tube, cut off from side view by a reinforcing channel rib which runs along both sides of the row of nozzles, whereas in all other devices, including the defendant's, these nozzles jut out from the spray bar in prominent silhouette. Second, the church window cut into the center rib on the face of the motor housing of the plaintiff's sprinkler and containing in vertical lettering the plaintiff's trade-name, "METCO" is absent and unsuggested in the prior art. However, it is not necessary to decide whether these two features, taken individually, are the products of invention, because, aside from the fact that the defendant does not infringe as to the spray-bar, having retained the protruding nozzles of the prior art, both spray-bar and church window together are so unimportant, compared to the other unoriginal features here-

tofore mentioned, in determining the over-all appearance of the plaintiff's sprinkler that a finding of invention as to them only cannot justify a conclusion that the design in its entirety is the product of invention. Nor, secondly, can these features even if found to be original stand separately; independent of the whole, as the plaintiff's monopoly, since they are not claimed as such. Plaintiff's claim does not specify these or any other individual features of the sprinkler as salient or dominating characteristics, but rather consists of a drawing of the entire sprinkler without any description, declaring a monopoly on the design "substantially as shown." In such a case where there is a drawing and no written description, the patent covers "the design as a whole, and not any part of it as a part; and it is to be tested as a whole—as to infringement." Ashley v. Samuel C. Tatum Co., 2 Cir., 186 F. 339, 341, citing Dobson v. Dornan, 118 U.S. 10, 6 S.Ct. 946, 30 L.Ed. 63. Hence, if the over-all design of the plaintiff's sprinkler be unpatentable for lack of invention, there is here no valid patent to be infringed, even though there be originality in some of the details of the design.

The sprinkler design proves to be no more than the result of the plaintiff's adapting to the lawn sprinkler the more than decade old and still popular fashion of streamlining currently found in innumerable manufactured articles. The technique of achieving this now routine effect, by stressing the rounded and curved form as opposed to the square and angular, is well within the competence and knowledge of the average designer. Since the plaintiff's design lacks the requisite originality, the patent sued on is invalid for want of invention.

The claimed commercial success of this design patent can add nothing to its patentability. It is only where the issue of patentability is otherwise doubtful that commercial success should be allowed as corroborative evidence of its invention. Application of Zonenstein, 172 F.2d 599, 36 C.C.P.A., Patents, 845. Such is not the case here where the design is clearly unpatentable for lack of invention.

If it could be assumed that the design patent in question is valid, then the plaintiff's case must still fail for the defendant's device would not infringe upon it. The defendant's sprinkler does not generally resemble the plaintiff's to such an extent that the average purchaser, giving the usual buyer's attention to the sprinklers, would mistake the over-all appearance of the defendant's device for that of the plaintiff's.

## Conclusions of Law

From the foregoing I conclude and rule that Design Patent No. 157,315 is invalid for want of invention.

I conclude and rule that, if valid, Design Patent No. 157,315 has not been infringed by the defendant.