## COLUMBIA PROTEKTOSITE CO., Inc. v. GREAT AMERICAN PLASTICS CO. et al.

### Civ. A. No. 52–348.

United States District Court
D. Massachusetts.

March 4, 1953.

Richard F. Walker, Boston, Mass., S. Mortimer Ward, Jr., New York City, John D. Woodberry, Boston, Mass., for plaintiff.

Lee M. Friedman and Friedman, Atherton, King & Turner, Boston, Mass., for defendants.

SWEENEY, Chief Judge.

In this action the validity of Patent No. 163.556 covering a design for a child's toilet seat is the only issue. The defendants admit that their product infringes the patent if it is valid.

#### Findings of Fact

The three defendants are closely interrelated as to management and ownership, and each is engaged in the manufacture or sale of the accused child's toilet seat.

Two of the defendants, although foreign corporations, have agreed to submit to the jurisdiction of this Court for the purpose of this suit.

The child's toilet seat in question is of the general type that is constructed to fit upon or within the customary adult size toilet seat, thereby permitting the child to utilize the conventional toilet bowl. The sole claim comprising the disputed patent is for "the ornamental design for a child's toilet seat as shown". Reference to the drawings accompanying the patent specification and to the plaintiff's seat itself provide a description of the plaintiff's design, which is briefly as follows: Molded into a single integral sheet of plastic are a seat, a back rest, and a urine deflector. The seat is provided with a hole in its center and with two skirts, one along the outer edge, and the other along the inner edge, or the edge of the hole. The back rest rises from the bottom outside edge of the seat proper a little forward of its mid-point on a lateral or sideward viewing and climbs at approximately a 60° angle into the top edge of a slanting retaining wall. Along the entire preriphery of this retaining wall and crossing over to the bottom outside edge of the seat is a thickened beading. From the top edge of the back of the wall to the lowest extremity of the seat an unbroken line runs downwardly on the outside of the back. The urine deflector is molded integrally with the front of the seat. It consists of a cone-shaped projection rising from the top level of the front portion of the seat and extending backwards (on a side view) to the forward area of the circumference of the hole of the seat. This projection on the top level of the seat is complemented by a skirt extending downwardly from the lower level of the seat with its deepest point immediately below the front of the seat. The upper surface line of the cone-shaped projection and the lower surface line of the skirt are parallel, both slanting upwardly in the direction of the back of the seat.

On the overall, the plaintiff's design is marked for its peculiar arrangement of complementing and contrasting lines and curves, i. e., the slanting parallel lines of

the urine deflector, the smooth curvilateral surface of the forward portion of the seat, the tapered curve of the top of the urine deflector, and that of the top edge of the back (upon viewing the seat from its front), etc.

The plaintiff cites these and other features of its design as constituting the requisite elements of patentability, namely: novelty, originality, ornamentation, and invention. See 35 U.S.C. § 73.

A design patent is invalid when previous to the time of its conception by the patentee a substantially similar design has already been in existence. In such a case the Courts say the patent is invalid for anticipation or for lack of novelty.

However, even if a design be entirely new and unprecedented and possess all the other qualities specified in the patent statute, still it might not be patentable, for the law requires that the patent must be the result of the exercise of the inventive faculty. See Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606; Boston Leather Specialty Co. v. Vatco Mfg. Co., D.C., 17 F.Supp. 910, Seaver v. Wm. Filene's Sons Co., D.C., 37 F.Supp. 762.

Phrased in different words, the design must represent "a step beyond the prior art requiring what is termed 'inventive genius'." Glen Raven Knitting Mills, Inc. v. Sanson Hosiery Mills, Inc., 4 Cir., 189 F.2d 845, 853. Whether a design of the type under consideration possesses the requisites of novelty and invention must be judged from the overall visual appearance of the patented design, not from an emphasis upon or a preoccupation with any of its component or individual elements.

The defendants cite several prior art references as anticipating the plaintiff's design patent. After a careful inspection of all this data the Court is compelled to agree with the plaintiff's conclusion that "none of the defense material shows even for a single individual element, the lines, contours, and relative dimensions of the plaintiff's corresponding element, and in the critical aspect of the overall appearance resulting from the sum total combination of elements, none of the prior art seats approximate the overall of the plaintiff's patented design." Consequently, I rule that the design of the plaintiff's patent is "new" within the terms of Title 35, U.S. C. § 73.

On the issue of invention, the defendants point to several decisions standing for the general proposition that a mere regrouping of elements old in the field is not invention unless it rises above the commonplace. See Grinoch v. Tuxton Cravats Inc., D.C., 101 F.Supp. 391; Knickerbocker Plastic Co., Inc. v. Allied Molding Corp., 2 Cir., 184 F.2d 652, White v. Leanore Frocks, Inc., 2 Cir., 120 F.2d 113, Buffalo Specialty Co. v. Art Brass Co., D.C., 202 Fed. 760. They contend that the design patent in suit is manifestly within this rule since in truth the plaintiff's design is no more than a "re-adaptation and unstartling regrouping of old elements", requiring for its composition only the skill of a routine designer. To substantiate these contentions the defendants single out each one of the three elements comprising the plaintiff's design patent, and cite prior art patents in which they claim these same elements appear in line and form and general overall design, substantially similar to the patent in suit.

Thus, the defendants contend that: the seat of the plaintiff's structure "is substantially that of the Middleton Patent, No. 2,446,381, Defendants' Exhibit A, with a common round hole"; the back rest in the Wyville et al. design patent No. 90,745 "has a configuration like that of the Baldanza patent in suit"; further, the back rest in Middleton "is smooth and extends into the flange or outer skirt of the seat proper" as does that of the plaintiff's patent; the urine deflector or horn "as an integral component of an infant's toilet seat" is found in several prior art references, i. e., Carlson patent No. 2,127,020, Kroll et al. patent No. 93,774, the Wyville et al. patent mentioned supra, and the structure illustrated in the Montgomery Ward catalogue of 1946–47, page 355, as Item z; the deflector in the Carlson patent "forms a sharp line of juncture with the seat" as does the deflector in the plain-

tiff's patent, the position and general configuration of the horn in the Montgomery Ward catalogue are the same as in the patent in suit; although it is true that the horn in the reference just mentioned differs slightly from the plaintiff's in "that its surface merges smoothly with the seat rather than in the sharp line of demarcation of the patent", still a "sharp line of juncture between the horn and the seat is clearly old, as shown by Carlson and Kroll"; another illustration of the deflector or horn employed by the plaintiff in its design patent is found in the Worsell patent No. 466,068, for a bed pan: the horn in Worsell also "intersects in a sharp line with the surface to which it is affixed," further Worsell's horn has a skirt composed of tapered walls, like the plaintiff's deflector; the nose of the Worsell deflector is not elongated as in the plaintiff's design, but if the ordinary round hole was used with Worsell's seat instead of the elongated seat hole, the deflector due to "functional reasons" would at its rear, extend close to the hole and consequently would have to be elongated.

An examination of the drawings of the various cited references with particular attention to the details enumerated above, reveals that while in many aspects similarities do exist between the prior art designs and the design patent in issue, still there remain many significant differences also. The seat of Middleton resembles the plaintiff's to a certain degree on a side viewing, and the back line of the back rest is similar in that it runs downwardly without any outward projection at seat level. However, the Middleton seat is without the forward uneven tapered contours of the Baldanza patent and the back line in Middleton is in a curve as distinct from the straight line included in the plaintiff's combination. The contours of the walls of the Wyville back rest conform to a certain extent to those of the present patent, but there is a significant departure therefrom in that the seat proper projects outwardly beyond the lower edges of the back.

The many urine deflectors cited by the defendants fail to resemble even remotely the plaintiff's deflector with the exception of that in the Worsell and Montgomery z. However, any similarities present here give way to wider differences, viz.: the upwardly projecting part of the Worsell deflector is bluntly rounded in contrast to the conical taper of the plaintiff's deflector, and the slope of Worsell's upward surface does not parallel the lower oblique lines of the deflector skirt. The deflector in the Montgomery Ward illustration approximates that of the plaintiff's in dimensions and size; however it is not cylindrically molded and does not merge with the seat in a sharp line of demarcation as in the plaintiff's design. Also, the forward portion of the lower skirt is pushed back to the mouth of the deflector so that it does not complement the upper portion of the deflector at the prow or forward point of the toilet seat.

The view a Court must take of a design patent when called upon to determine its validity is that of its toute ensemble without breaking it down into its several component parts and isolating them for inspection. The Court feels that the plaintiff's design is not a trifling variation of what has gone before, but that it constitutes a fresh attempt sufficiently distinctive to be considered an advance in the prior art.

■ However, even if we were to accept the defendants' characterization of the design in suit as being essentially a re-adaptation of *old elements,* that fact would not in itself prevent us from attributing the quality of invention to the plaintiff's design, for the fact that each element in a patented design is old does not of itself negative invention, since patentability may reside in the manner in which the elements are combined. See In re Park, 181 F.2d 255, 37 C.C.P.A., Patents, 1021; In re Miller, 194 F.2d 106, 39 C.C.P.A., Patents, 824; Glen Raven Knitting Mills, Inc. v. Sanson Hosiery Mills, Inc., 4 Cir., 189 F.2d 845.

■ The plaintiff also asserts that there has been much commercial success in the production of its patented toilet seat. Alone commercial success can mean nothing, but where there is doubt upon the question of validity it may prove a de-

ciding factor. See Metallizing Engineering Co., Inc., v. General Screw Mach. Products, Inc., D.C., 93 F.Supp. 878, In re Zonenstein, 172 F.2d 599, 36 C.C.P.A.Patents, 845; In re Rutledge, 47 F.2d 797, 18 C.C.P.A.Patents, 1081; Theodore W. Foster & Bro. Co. v. Tilden-Thurber Co., 1 Cir., 200 Fed. 54. It is not the deciding factor here.

### Conclusions of Law

From the foregoing I conclude and rule that the plaintiff's patented design is valid as it conforms in every respect with the statutory requirements of novelty, originality, and ornamentation, and that it involved in its conception the exercise of the inventive faculty as distinct from the ordinary skill of the routine designer.

I also find and rule that the defendants infringe the patent in suit. A permanent injunction as prayed for will issue.

Upon application a reference will be made for the ascertainment of damages.